**JOSEPH L. WILMOTTE & CO., INC.,**
Plaintiff,

v.

**COBELFRET LINES, S. P. R. L.,**
Defendant.

No. 47–410–Civil–J.

United States District Court
M. D. Florida, Jacksonville
Division.

Sept. 9, 1968.

George Stelljes, Jr., Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., for plaintiff.

James F. Moseley, Kurz, Toole, Taylor & Moseley, Jacksonville, Fla., for defendant.

## OPINION AND ORDER

SCOTT, District Judge:

This action arises under the "Carriage of Goods by Sea Act", 46 U.S.C. § 1300 et seq. The plaintiff, Joseph L. Wilmotte & Co., Inc. (hereinafter referred to as Wilmotte), brings this action against Cobelfret Lines, S.P.R.L. (hereinafter referred to as Cobelfret), defendant, to recover for cargo loss under the Act. The question posed here is whether or not Cobelfret is a "carrier" within the terms of the Carriage of Goods by Sea Act (hereinafter referred to as COGSA) under the circumstances disclosed by the stipulated facts as set forth below.

On February 27, 1965, Neptune Belgium Transport & Shipping Co., Ltd., shipping and forwarding agents for Wilmotte, entered into a contract of carriage and received a bill of lading of that date. As stated in the bill of lading, Wilmotte delivered to the vessel SS "Rockport" and owners at Antwerp, Belgium, 200 lifts of steel coils to be transported to the port of Jacksonville, Florida. Cobelfret was the charterer of the "Rockport". The vessel sailed and after arriving in Jacksonville, Florida, on April 1, 1965, failed to deliver to Wilmotte 5 steel coils worth $1,082.55. Freight for the carriage of the goods was collected by the agent of Cobelfret. Wilmotte seeks to recover this loss.

Wilmotte contends that Cobelfret became obligated on the bill of lading as a principal because Cobelfret accepted the benefits of the contract of carriage and failed to disclose the identity of the principal for whom it purported to act. Cobelfret contends in its defense that the bill of lading was between Wilmotte and the owners of the vessel and that Cobelfret was not the owner of the ves-

sel but merely chartered the vessel from Altema Compania Maritima, S.A. To resolve these contentions, reference must be made to the language of the bill of lading and to the uncontroverted facts as set forth in the complaint and stipulations of facts.

Admittedly, Cobelfret was the charterer of the vessel. On bill of lading forms imprinted with the name of defendant, "Cobelfret Lines", Neptune Belgium Transport & Shipping Co., Ltd., as agents for Wilmotte, issued a bill of lading for the 200 lifts of steel coils. By the charter the master was authorized to execute bills of lading. The vessel was under a "Gencon" charterparty (Uniform General Charter adopted by the Baltic and International Maritime Conference). Under authority of this charterparty the master executed a "conlinebill" (Liner Bill of Lading terms approved by the Baltic and International Maritime Conference). The conlinebill contained the usual identity of carrier clause.[1] After the master signed the bills of lading they went to Cobelfret, rather than to the owners of the vessel, and Cobelfret handed them back to Neptune.

■ The Liner bill of lading did not define the word "carrier". The only indication from the bill of lading itself that Cobelfret might not be a "carrier" was in paragraph 17 which stated that the contracting parties were the merchant and the owner of the vessel named therein. However, only the name of the vessel appeared on the written document. The bill of lading did not affirmatively reflect that Cobelfret was not the owner of the vessel. Wilmotte could reasonably have concluded under

the circumstances disclosed here that Cobelfret was a party to the contract of carriage.

■ Cobelfret contends that under these circumstances it was not a "carrier" within the meaning of COGSA, which defines the term in 46 U.S.C. § 1301 as "the owner [not applicable] or the charterer who enters into a contract of carriage with a shipper". If Cobelfret was a party to the contract of carriage it was a carrier within the meaning of the Act. 46 U.S.C. § 1301. The issue resolves itself into whether or not Cobelfret entered into a contract of carriage by allowing its bill of lading forms to be filled out, executed by the master, received back from the master and then returned to the shipper's agents. Counsel for both parties agree that if Cobelfret was not a carrier within the terms of COGSA, then Cobelfret is not liable on the contract and that is the end of the case.

■ Since Cobelfret held itself out to the public as a common carrier, solicited and received merchandise for transportation, chartered the vessel to carry what it received, handled the signing of the bills of lading, determined the vessel on which the cargo should go and had the privilege under the charterparty to employ stevedores and fix the freight, Cobelfret became a party to the contract of carriage when the bills of lading were signed. See Pendleton v. Benner Line, 246 U.S. 353, 38 S.Ct. 330, 62 L.Ed. 770 (1917). See also Longley on Common Carriage of Cargo, § 3.05[1], p. 26, which states that a charterer may be liable as a carrier if it puts the vessel on berth as a common carrier.

1. "17. *Identity of Carrier*
"The contract evidenced by this Bill of Lading is between the Merchant and the Owner of the vessel named herein (or substitute) and it is therefore agreed that said Shipowner only shall be liable for any damage or loss due to any breach or non-performance of any obligation arising out of the contract of carriage, whether or not relating to the vessel's seaworthiness. If, despite the foregoing, it is adjudged that any other is the Carrier and/or bailee of the goods shipped here-

under, all limitations of, and exonerations from, liability provided for by law or by this Bill of Lading shall be available to such other.
"It is further understood and agreed that as the Line, Company or Agents who has executed this Bill of Lading for and on behalf of the Master is not a principal in the transaction, said Line, Company or Agents shall not be under any liability arising out of the contract of carriage, nor as Carrier nor bailee of the goods".

Carver on Carriage by Sea (7th Ed.), § 153, states the law as follows:

"When the charterer procures a cargo to satisfy the charter-party from other merchants, questions arise as to who is responsible to those shippers for the performance of the contracts of carriage made with them * * *.

"The question is really one of fact depending on the documents and circumstances of each case".

In absence of clear evidence showing that the shipper Wilmotte had knowledge of the charterparty or knowledge that the charterer Cobelfret was acting solely as agents for the shipowner Altema Compania Maritima, the charterer Cobelfret was a "carrier" within COGSA and with that status became subject to the liabilities and responsibilities thereunder. This complies with the purpose of the Act which was to protect the shipper. Standard Electrica, S.A. v. Hamburg Sudamerikanische, Etc., 375 F.2d 943 (2d Cir. 1967). The shipper was in essence relying on Cobelfret to be the "carrier".

Let final judgment for the plaintiff be entered, together with its costs to be hereinafter taxed.