**MITSUI & CO. (U.S.A.), Inc., Plaintiff,**

v.

**TOKO KAIUN KABUSHIKI KAISHA, Defendant and Third-Party Plaintiff,**

v.

**TEXPORTS STEVEDORE COMPANY, Inc., Third-Party Defendant.**

**Civ. A. No. 70–H–206.**

United States District Court, S. D. Texas, Houston Division.

April 11, 1972.

Robert A. Feltner, Houston, Tex., for plaintiff.

J. E. Davey, Eikel & Davey, Houston, Tex., for defendant and third-party plaintiff.

G. Byron Sims, Brown & Teed, Houston, Tex., for third-party defendant.

## MEMORANDUM OPINION

CARL O. BUE, Jr., District Judge.

On July 31, 1968, a cargo of steel pipe was loaded on board the M/V MARITIME LEADER at the Port of Wakayama, Japan, for shipment to Houston, Texas. In connection with such shipment Toko Kaiun Kabushiki Kaisha (Toko), the voyage charterer of the M/V MARITIME LEADER, issued to the shipper, Mitsui & Co., Ltd. (Mitsui), its bills of lading Nos. WH–63 through 66. On the face of each bill of lading was printed the following:

It is agreed that the custody and carriage of the goods are subject to all of the terms of this bill of lad-ing (including those on the reverse side) *which shall govern the relations between the shipper, consignee and the Carrier,* in every contingency, wherever and whenever occurring, and also, in the event of deviation, or of unseaworthiness of the ship at the time of loading or inception of the voyage or subsequently. None of the terms of this bill of lading shall be deemed to have been waived by the Carrier unless by express waiver signed by a duly authorized agent of the Carrier. (emphasis added)

The vessel arrived at Houston on September 10, 1968, where the involved cargo was unloaded on September 12 by Texports Stevedore Company, Inc. (Texports), a local stevedore which had orally contracted with Toko to discharge the cargo.

Thereafter, Mitsui through its American affiliate, Mitsui (U.S.A.), Inc., the consignee, made claim against its insurance carrier for damage to the pipe. The insurance carrier after settling the claim became subrogated to the rights of its assured and proceeded against Toko, the carrier, under the aforementioned bills of lading.

Prior to the expiration of one year from the date of discharge of the cargo, Mitsui requested and received an extension of time within which to sue Toko through service of process on its local agent, thereby extending the time for filing suit to December 9, 1969. On November 6, a further extension of time was requested by Mitsui from Toko, and such extension as granted advanced cargo's time to sue until March 9, 1970.

On March 6, 1970, suit was filed by Mitsui's subrogee against Toko for damage to cargo in the amount of $6,000, and on April 3, 1970, Toko filed its third-party action against Texports. The indemnity action alleged that if any damage to the cargo occurred, it was the result of the negligence of Texports in discharging the cargo or a consequence of Texports' failure to perform in a workmanlike manner its contractual obligations owed to Toko.

Texports has now moved for summary judgment, seeking a dismissal of Toko's indemnity suit on the grounds that the third-party action is time-barred. It claims that pursuant to Clauses 19 and 24 of the applicable bills of lading, it is entitled to assert as a defense to the indemnity action the one year limitation provision of the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6). Texports' rationale is that such limitation is available to it in the indemnity action through COGSA's Clause Paramount, in the bill of lading and that Toko, by unilaterally extending cargo's time to sue the carrier, has interfered with the stevedore's defense of limitations and thereby has discharged Texports from all liability it might otherwise have had to Toko.

Clause 19 of the bills of lading provides that:

*In any event the carrier and the ship shall be discharged from all liability* in respect of loss, damage, delay or any other claim concerning the goods or their carriage, *including,* but not limited to, *any claims by preceding or connecting carriers for contribution or indemnification for claims asserted against or paid by such other carriers, unless suit is brought within one year* after the delivery of the goods or the date when the goods should have been delivered. Suit shall not be deemed brought until jurisdiction has been obtained over the carrier or ship by service of process or by an agreement to appear. Nothing shall be deemed a waiver of any of the provisions of this clause or clause 18 except an express written waiver specifically referring thereto and signed by the carrier or its authorized agent. (emphasis added)

Clause 24 of Toko's bill of lading provides:

*In Addition to those hereinabove listed as included in the term "carrier",* the owners, managers, charter-ers, master, officers and crew members of the ship and the carrier's agents, servants, officers, *stevedores,* longshoremen, representatives, contractors, terminal operators or others dealing with cargo destined for or discharged from the vessel or used, engaged or employed by the vessel and the carrier, and any substituted vessel or carrier, whether any of them be acting as carrier or bailee or as an independent contractor, *shall have the benefit of all privileges and of all exemptions, immunities from, and limitations of liability granted to, carrier in this bill of lading,* or by laws applicable to the carrier, *including, but not limited to, those limitations set forth in clauses 17 and 19 of this bill of lading, and the carrier shall be deemed to contract for the benefit of all such parties in this regard.* Protection extended to third persons in the foregoing are granted to the extent permitted by law or contract, but shall in no event give rise to any liability of the carrier to such third person. (emphasis added)

Texports asserts that the third-party beneficiary status conferred upon it by Clause 24, extending to the stevedore all exemptions and immunities from and limitations of liability granted to the carrier, grants to the stevedore the benefit of Clause 19 and the one year statute of limitations. Texports further reasons that the one year statute applies to suits for indemnity between the carrier and the stevedore by reason of the language of that clause relating it to "any claims by preceding or connecting carriers for contribution or indemnification for claims asserted against or paid by such other carriers." Since Toko unilaterally extended time for suit by Mitsui without the stevedore's knowledge or consent, it is urged that the action for indemnity against the stevedore is precluded, Grace Lines, Inc. v. Central Gulf S. S. Corp., 416 F.2d 977 (5th Cir. 1969), cert. den., 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970).

It is unnecessary to discuss Texports' status as a third-party beneficiary to the contract of carriage as evidenced by the bill of lading inasmuch as (1) that fact is essentially undisputed here, and (2) this Court has this day entered its Memorandum and Order in Dorsid Trading Co. v. S/S Fletero et al., 342 F. Supp. 1, which Memorandum explores the case law and the basis for and nature of such a third-party beneficiary relationship. *See also* Carle & Montanari, Inc., v. American Export Isbrandtsen Lines, Inc., 275 F.Supp. 76 (S.D. N.Y.), aff'd, 386 F.2d 839 (2d Cir. 1967), cert. den., 390 U.S. 1013, 88 S. Ct. 1263, 20 L.Ed.2d 162 (1968). Thus, for purposes of this opinion it is uncontested that Texports is a third-party beneficiary of the bill of lading, with the right in such capacity to sue upon such contract, (*see* the *Fletero* opinion). What is contested is whether such beneficiary status occupied by the stevedore with reference to the basic contract of carriage can be transposed and utilized as a defense to the indemnity action which is a separate lawsuit.

■■ It is well settled that a third-party beneficiary's rights depend upon and are measured by the terms of the contract between the promisor and promisee, 17 Am.Jur.2d Contracts § 315 at 743. Thus, in order to determine whether the beneficiary has the right to claim the benefit of the one year statute in an indemnity action, it must be found that the contract is applicable by its terms to such indemnity suit. For reasons hereinafter set out, this Court does not believe that the bills of lading and the terms recited therein have any application to this indemnity suit filed by the carrier against the stevedore based on the alleged negligence or breach of warranty of workmanlike service of the stevedore.

■ It is fundamental that COGSA is designed to regulate the rights and liabilities between cargo and the carrier, *see* Knauth, Ocean Bills of Lading at 99–111; W. Poor, Charter Parties and Ocean Bills of Lading § 62 at 143–51 (1968). *See also* Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 301–02, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); Encyclopaedia Britannica Inc. v. S.S. Hong Kong Producer, 422 F.2d 7, 11 (2d Cir. 1969). This statutory purpose is reaffirmed on each of the relevant bills of lading, wherein it is recited:

> that the custody and carriage of the goods are subject to all of the terms of this bill of lading . . . which shall govern the *relations between the shipper, consignee, and the carrier.* . . . (emphasis added)

The definition of the term "carrier" as recited in COGSA, 46 U.S.C. § 1301(a) includes "the owner or the charterer who enters into a contract of carriage with a shipper." Clause 24 of the bill of lading lists parties in addition to those falling within the ambit of the term "carrier" who have specifically been given the benefit of exemptions and immunities from and limitations of liability, including the one year statute of limitations. These parties, including the stevedore, are not carriers, and do not in any sense become carriers by operation of this clause. They are employed by the carrier, primarily as agents or independent contractors, and they obtain certain benefits accruing to the carrier who is "deemed to contract for the benefit of all such parties in this regard. . . ." Thus, it is the carrier who specifically contracts with cargo in the bill of lading to extend the one year statute of limitations to the stevedore.

The effect of such a provision is that the one year statute is available to prevent stale claims by *cargo interests* against the *carrier and others.* Accordingly, the assertion of the one year limitation as a defense is proper (1) to a suit by cargo against the carrier, and (2) to a suit by cargo against the steve-

dore in instances in which the stevedore clearly has been made a third party beneficiary of the contract of carrier by the parties. However, the one year statute is not properly invoked as a defense to a separate suit such as the present indemnity action by the carrier against the stevedore.

Texports vigorously argues in further support of its position, that since it as a stevedore qualifies as a carrier under Clause 24, it should obtain the benefits accruing to such a carrier under Clause 19. This clause of the bill of lading discharges the carrier from claims concerning the goods or the carriage including "claims by preceding or connecting carriers for contribution or indemnification for claims asserted against or paid by such other carriers . . ." unless suit is brought within one year after delivery of the goods. Since the stevedore has been accorded certain other benefits possessed by the carrier under the bills of lading, it is therefore urged that the one year statute should also be a defense to a suit for indemnification by the carrier against the stevedore. There are several reasons why this analysis is unsupportable.

■ First, while it is a safe presumption that bills of lading involving connecting carriers incorporate the provisions of COGSA, the contract as between the carrier and the stevedore for the discharge of the cargo does not. In this particular case, the contract is oral with the relevant legal obligations arising under the familiar *Ryan* theory, Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

■ Second, a logical, meaningful construction of Clause 19 of the bills of lading compels recognition that a stevedore (and, as a matter of interest, a longshoreman as well) is not a carrier under the COGSA definition, even though both are accorded beneficiary status as are others under Clause 24.

That being so, references to contribution and indemnity and the one year limitation period in such clause are inapplicable to the rights of the stevedore. It does not follow that, simply because the stevedore has been given the benefit of the exemptions and immunities of the carrier under the specific language of the bill of lading, the proper construction of the contract of carriage is achieved by substituting or equating the word "stevedore" in place of the word "carrier", wherever and whenever it appears.

■ Third, if, indeed, any unresolved ambiguity does exist after a proper construction is made of Clauses 19 and 24, with full awareness of the legal import of the definitions of COGSA, parol evidence is clearly available to resolve the ambiguity under traditional principles of contract law. Likewise, if it is found that the writing (the bill of lading) does not evidence all subjects of negotiation (such as those contained in the collateral oral contract between the stevedore and the carrier), such contemporaneous provisions, independent of and not inconsistent with the written contract, may be proved by parol. *See* Harville Rose Service v. Kellogg Co., 448 F.2d 1346, 1350 (5th Cir. 1971), and texts cited therein; Clark v. United States, 341 F.2d 691, 694 (9th Cir. 1965). *See also* 30 Am.Jur.2d Evidence § 1050 at 185 (1967).

The Court, therefore, is free to look to the sworn representations of certain principals in this suit to determine intent. In this regard, reference to the statement of Mr. Norio Ishida, Chief of the Overseas Section of Toko, pars. 8 and 9, is of benefit:

8. In preparing its form of bill of lading, Toko was concerned solely with defining the rights and liabilities of cargo interests on the one hand and the carrier and its contractors on the other hand; consequently, there is no provision in the bill of lading relative

to the rights and obligations of the carrier and the stevedore as between themselves. Rather, the matter of defining the rights and obligations of Toko and the stevedore as between themselves was dealt with in the agreement referred to in paragraph No. 2 above entered into by Toko and Texports. As noted above, that agreement was oral and to the best of my recollection, the matter of limitation of time in which either party to the agreement might bring suit against the other was not dealt with in the agreement nor was it at any time discussed by either party.

9. Clauses 19 and 24 were placed in the bill of lading for the sole purpose of protecting Toko and its contractors against stale claims made against them by cargo interests. As such they were intended only as a defense with respect to the claim of cargo interests. They were not intended to have any application, much less bar, suits by Toko against its contractors.

This statement constitutes no innovation and serves only to reinforce the traditional purposes of the bill of lading as evidencing a contract of carriage between cargo and the carrier. It defines the rights and liabilities of cargo interests on the one hand and the carrier and its contractors on the other. The suit for indemnity is premised neither upon COGSA nor the bills of lading; it is premised upon Toko's separate and collateral contract with Texports to discharge the cargo from the M/V MARITIME LEADER at Houston.

Grace Lines, Inc. v. Central Gulf S. S. Corp., 416 F.2d 977 (5th Cir. 1969), cert. den., 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970), cited by Texports as controlling, is readily distinguishable. Grace Lines involved a shipowner and a charterer bound by a charter party containing a "clause paramount" incorporating COGSA. The charterer as the carrier entered into a contract of carriage with cargo evidenced by the usual bill of lading governed by COGSA. Thus, both the bill of lading and the charter were specifically subject to COGSA and the one year statute of limitations. Cargo timely sued the carrier for damage occurring during the voyage. By the time the charterer filed an indemnity suit against the shipowner, the one year statute of limitations had run on any direct suit by cargo against the shipowner. Inasmuch as the charter also incorporated COGSA, the Court held that the indemnity action was barred by the COGSA one year statute of limitations. The present case has no resemblance to Grace Lines, and Texports can gain no comfort from its holding. Instead, traditional legal concepts control the result in the present indemnity action.

The Grace Lines case warrants further comment. The opinion states that "indemnity may not be awarded without the support of liability on the part of the indemnitor to the person injured." This principle is not applicable to the present suit. Such language relates to a fact situation in which both parties have liability based upon the same statutory or contractual duties. In Grace Lines, both the charterer and shipowner had COGSA liability. In the instant case, the stevedore has no COGSA liability to cargo under the contract of carriage; its liability to the carrier in an indemnity action is based on a separate contract. Such liability comes into play only if it breaches its implied warranty owed to the carrier to discharge the cargo in a reasonably safe and workmanlike manner. See, e. g., Lyons-Magnus, Inc. v. American-Hawaiian S. S. Co., 41 F. Supp. 575 (S.D.N.Y.1941).

■ It is further contended by the stevedore, still in reliance on the Grace Lines decision, that the carrier, by unilaterally granting an extension of suit time to cargo interests, interfered with the stevedore's defense of limitations and thus discharged the stevedore from all liability it might otherwise have had

to the carrier. As stated, *supra*, unilateral extension to cargo by the carrier of time in which to bring suit on the contract of carriage has nothing to do with the stevedore's defenses to the carrier's separate indemnity action.

■ The separate stevedoring contract between the carrier and the stevedore is maritime in nature, and thus is subject to the doctrine of laches, United New York Sandy Hook Pilots Ass'n v. Rodermond Industries, Inc., 394 F.2d 65, 74 (3d Cir. 1968). Accordingly, the proper inquiry for the Court is whether inexcusable delay by the carrier and prejudice to the stevedore are present, Gardner v. Panama Ry. Co., 342 U.S. 29 31, 72 S.Ct. 12, 96 L.Ed. 31 (1951); Akers v. State Marine Lines, Inc., 344 F.2d 217, 219 (5th Cir. 1965); Point Landing, Inc. v. Alabama Dry Docks & Shipbuilding Co., 261 F.2d 861, 865 (5th Cir. 1958).

■ In measuring whether there has been inexcusable delay in instituting suit, a valid point of reference is the analogous Texas statute of limitations governing oral contracts; here the statute extends two years from the date of payment by the indemnitee. Since the carrier has not been cast in liability and has paid no part of cargo's claim, the cause of action for indemnity has not accrued. States Steamship Co. v. American Smelting & Refining Co., 339 F.2d 66 (9th Cir. 1964), cert. den., 380 U.S. 964, 85 S.Ct. 1109, 14 L.Ed.2d 155 (1965). That being so, it is obvious that the statute has not expired, and it is presumed that inexcusable delay is not present in this suit, Oroz v. American President Lines, 259 F.2d 636 (2d Cir. 1958), cert. den., 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959). Inquiries as to the element of prejudice resulting from delay are unnecessary, inasmuch as the Court finds no such delay.

The Court, for reasons stated in this Memorandum, finds that Texports' Motion for Summary Judgment should be, and hereby is denied. It is so ordered.