**THYSSEN STEEL CORPORATION,**
**Plaintiff,**

**v.**

**S. S. ADONIS, her engines, boilers, tackle, etc., et al., Defendants.**

**No. 70 Civ. 1590.**

United States District Court,
S. D. New York.

Sept. 25, 1973.

Yorkston W. Grist, New York City, for plaintiff; Jeffrey L. Shernoff, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant Teseo Steamship Corp.; Richard E. Repetto, Harold V. Higham, New York City, of counsel.

## OPINION

BONSAL, District Judge.

Plaintiff, Thyssen Steel Corporation ("Thyssen"), a New York corporation, instituted this action for cargo damage on April 20, 1970 against the S. S. ADONIS ("ADONIS"), her owner, Adonis Compania Naviera, S. A. ("Adonis"), a Panama corporation, and the time charterer, Teseo Steamship Corporation ("Teseo"), a New York corporation. As no process was served on the ship or her owner, Teseo is the only defendant to appear in this action. This action was tried before the court without a jury on June 7, 1973.

In April of 1969, plaintiff, Thyssen, was the importer of a shipment of cold rolled steel coils moving from Antwerp, Belgium to Philadelphia aboard the ADONIS. The coils were purchased from Thyssen Stahl Union Export under invoice dated April 18, 1969, and were to be delivered to the Budd Co. ("Budd") in Philadelphia. The purchase agreement provided that the purchase was c.i.f. Philadelphia.

The ADONIS was a steel steamship of 11,977 gross tons registered under the Greek flag and whose home port was Piraeus, Greece. The time charter of the ADONIS is dated September 16, 1968 between Adonis, as owner, and Teseo, as charterer, and ran for a period of 22 to 26 months, at Teseo's option. The time charter further provided that Teseo had the option of subletting the vessel for all or any part of the time covered by the charter; that the time charter was subject to the U.S.A. Clause Paramount; and Clause 8 provided:

" . . . The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts."

On March 7, 1969, Teseo entered into a Uniform General Voyage Charter ("Voyage Charter") with Atlantic Shipping Co. S. A. ("Atlantic"), a Panama corporation, whereby Atlantic chartered the ADONIS from Teseo for a voyage from Antwerp, Belgium to one, two or three ports in the Port Everglades-Philadelphia range. (Atlantic was not made party to this lawsuit.) The Voyage Charter provided that Atlantic pay freight to Teseo at a rate of $4.75 per long ton for a minimum of 17,000 long tons, $4.35 per long ton loaded in excess of 17,000 tons, and that if the ADONIS discharged cargo at more than one port, Atlantic was to pay Teseo an extra $.25 per long ton for each additional discharging port. The Voyage Charter also provided (Clause 20):

"The cargo to be loaded, stowed, lashed, secured and discharged by Charterers' Stevedores free of risk and expense to the Owner." [Teseo]

The shipment of coils was delivered to and loaded in the Number 2 hatch of the ADONIS on April 25, 1969. Bills of

lading numbers 35 and 36 dated April 26, 1969 were issued by Agence Maritime Transoceanique N. V., agents of Atlantic, and stated that they were issued "FOR THE MASTER." The sole exceptions noted were that on bill of lading No. 35 was the notation "PACKING PARTLY RUST STAINED INNER EDGES OF CORE PACKING SLIGHTLY LIFTING GEAR MARKED BEFORE SHIPMENT" and on bill of lading No. 36 was the notation "RUST ON METAL ENVELOPES INNER EDGES OF CORE PACKING LIFTING GEAR MARKED BEFORE SHIPMENT." Bill of lading No. 35 covered 24 coils of cold rolled steel (13 red coils .0344 x 61″ and weighing a total of 141.040 kilograms and 11 white coils .0375 x 45″ and weighing a total of 184.550 kilograms). Bill of lading No. 36 covered 5 white coils .0375 x 45″ and weighing 84.010 kilograms.

After discharging cargo in Savannah, Georgia from May 16–22, 1969 and Wilmington, North Carolina from May 23–30, 1969, the ADONIS arrived at Philadelphia on May 31 and commenced to discharge cargo on June 2. Starting on June 2, 1969, Captain Martin Meseck, a surveyor for the plaintiff, went on board the ADONIS and inspected the cargo on board the vessel and during discharge. With him during his inspections were Captain Mistry for Charterers P & I Club, and Mr. Charles Bryant for the vessel's owners. In his survey report dated July 3, 1969, Captain Meseck stated:

"It must, however, be said that some of the coils were depressed in stow due to heavy overstow. Separation for the various discharging ports obviously made it necessary to stow coils in piles up to six (6) coils high. This is considered excessive, especially for the lighter gauge coils which will collapse under the pressure.

"In some instances the stow along the turn of the bilges was faulty subjecting coils in that area to one sided pressure, thus also causing coils to collapse.

\* \* \* \* \* \*

" . . . claims for depressed coils are to be expected on a moderate basis."

The survey report of Bryant & Irwin dated June 13, 1969 stated as follows with respect to the coils:

"NO. 2 HOLD

11 unpacked tractors were stowed over coils of galvanized sheet steel and 29 coils of cold rolled sheet steel. The coils of sheet steel were floored over with 3 solid layers of one inch thick dunnage to support the tractors. . . .

\* \* \* \* \* \*

The coils of steel stowed under the tractors on their rounds were 3 tiers high across the ship. Bottom tiers were cold rolled and the top tiers were cold rolled and galvanized coils of sheet steel were mingled. The coils were stowed in the after one-third of the compartment.

Bottom tier of coils were stowed over 4 inch thick dunnage. All cargo appeared in good condition. . . ."

\* \* \* \* \* \*

"GENERAL REMARKS

"Except for the out of round coils, of steel sheet, the general conditions of the coils were good. . . ."

On or about June 4, 1969, the 29 coils were delivered to Budd. Following delivery, Budd advised Thyssen that some of the coils were damaged, and sometime in June of 1969 Captain Meseck conducted a further survey of the coils at the warehouse of Budd. He was shown 5 coils which Budd rejected "due to their depressed condition which made it impossible for them to fit the coils on the mandrel of their processing machine."

Budd made a claim of $7,798.70 because of the depressed coils and this claim was accepted by Thyssen on the recommendation of Captain Meseck. Thyssen issued a credit note to Budd for the amount claimed on or about November 4, 1969. In his survey report dated October 27, 1969, Captain Meseck stated that "The damage must be attributed to faulty stowage in the vessel's holds."

After making his survey of the five coils at the warehouse of Budd, Captain Meseck arranged a salvage sale and the coils were sold to Glenside Steel Products for $5,291.98. After deducting a 2% commission, the balance of $5,186.14 was remitted to Thyssen with the result that Thyssen suffered a loss of $2,612.56 for which it is claiming in this lawsuit.

Plaintiff made a claim for this damage to Italia, an underwriter in Genoa, Italy, and was paid $2,733.91 by means of a credit note issued by Thyssen Stahl Union Export on or about February 15, 1970 to the plaintiff. However, plaintiff did not execute a subrogation receipt or loan agreement with the underwriter. By letter dated September 11, 1969, plaintiff notified Atlantic's agent of the damage to the coils.

The Court has subject matter jurisdiction and jurisdiction over the parties.

■ On the issuance of bills of lading Nos. 35 and 36 at Antwerp on April 26, 1969, the loading, stowing, transport and discharge of the coils became subject to the United States Carriage of Goods by Sea Act (46 U.S.C. §§ 1300 et seq.) ("COGSA"). Demsey & Associates v. SS Sea Star, 321 F.Supp. 663 (S.D.N.Y. 1970), aff'd in part and rev'd in part, 461 F.2d 1009 (2d Cir. 1972).

■■ Under COGSA, only a carrier who has entered into a contract of carriage with the shipper has a duty to properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried. 46 U.S.C. §§ 1301(a), 1303(2); Demsey & Associates v. SS Sea Star, 461 F.2d at 1014. The bills of lading covering the shipment of steel coils were contracts of carriage (46 U.S.C. § 1301(b)) and were issued by agents of Atlantic on its own form. No evidence was presented at trial to show that Teseo authorized Atlantic or its agents to sign or issue the bills of lading on Teseo's behalf. Though the Voyage Charter authorized the master to sign bills of lading, the record indicates that the master did not sign the bills of lading and no evidence was presented to show that he authorized Atlantic or its agents to sign on his behalf. Accordingly, as Teseo did not enter into a contract of carriage with Thyssen, Teseo is not a carrier under COGSA. 46 U.S.C. § 1301(a); Demsey & Associates v. SS Sea Star, *supra*; United Nations Children's Fund v. SS Nordstern, 251 F. Supp. 833 (S.D.N.Y.1965).

■ Plaintiff further contends that it is entitled to recover from Teseo as a third party beneficiary of the time charter between Adonis and Teseo which provided that Teseo was responsible for the stowage of the cargo on board the ADONIS. (Clause 8). However, plaintiff has cited no authority to support this contention, nor is there any evidence to show that Clause 8 of the time charter was inserted for the benefit of the shipping public, including Thyssen.

The foregoing constitutes the Court's findings of fact and conclusions of law. Rule 52(a), Fed.R.Civ.P.

Defendant Teseo's motion to dismiss the complaint at the conclusion of the trial is granted.

Settle judgment on notice.