TRADE ARBED, INC., Plaintiff,

v.

S/S ELLISPONTOS, Her engines, tackle, apparel, etc.; Atlantic Lines & Navigation Company, Inc., Her owner, charterer, manager and/or operator, Defendant/Third-Party Plaintiff,

v.

AYR SHIPPING CO., LTD., Third-Party Defendant.

Civ. A. No. H–78–1615.

United States District Court, S. D. Texas, Houston Division.

Jan. 7, 1980.

A. Thomas Kajander, Sharpe & Kajander, Houston, Tex., for plaintiff. G. Byron Sims, Brown, Sims & Ayre, Houston, Tex., for third-party plaintiff.

Ben L. Reynolds, Royston, Rayzor, Vickery & Williams, Houston, Tex., for third-party defendant.

## MEMORANDUM and ORDER

CARL O. BUE, Jr., District Judge.

Pending before the Court are two motions of third-party defendant Ayr Shipping Co., Ltd. (Ayr): (1) motion to dismiss the third-party complaint; and (2) motion to stay the third-party complaint pending arbitration. For the reasons stated herein the motion to dismiss the third-party complaint is denied, and the motion to stay the third-party complaint pending arbitration is granted.

## I. BACKGROUND

On August 23, 1978, plaintiff Trade Arbed, Inc., cargo owner, filed suit against the S/S Ellispontos, in rem, and Atlantic Lines & Navigation Company, Inc. (Atlantic), in personam, to recover for damage to certain cargo of steel pipe delivered at the Port of New Orleans in March 1978. Atlantic, as third-party plaintiff, then filed a third-party complaint against Ayr, third-party defendant, on July 23, 1979, alleging Ayr's breach of the charter party between Atlantic and Ayr. Ayr filed the two instant motions in response to the third-party complaint. Ayr's primary contention in the motion to dismiss the third-party complaint is that Atlantic's cause of action for indemnity is barred by the one-year statute of limitation of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300 et seq., 1303(6) (1975). Ayr's motion to stay the third-party complaint pending arbitration is based on a provision of the charter party between Ayr and Atlantic which specifies that all disputes between Ayr and Atlantic be referred to arbitration.

The bills of lading for the carriage of cargo, which were issued by third-party plaintiff (Atlantic) to plaintiff (Arbed), were governed by COGSA according to the terms of the Act, 46 U.S.C. § 1300 (1975), terms of the bills of lading, and a provision of the charter party that the U.S.A. Clause Paramount, inter alia, was to be incorporated in all bills of lading. The U.S.A. Clause Paramount as applicable to the charter party however, was stricken from the charter party between third-party plaintiff (Atlantic) and third-party defendant (Ayr).

## II. THIRD–PARTY DEFENDANT AYR SHIPPING CO., LTD.'S MOTION TO DISMISS ATLANTIC LINES & NAVIGATION CO., INC.'S THIRD–PARTY COMPLAINT

To invoke the one-year statute of limitation of COGSA, Ayr relies on the authority of Grace Lines, Inc. v. Central Gulf Steamship Corporation, 416 F.2d 977 (5th Cir. 1969), cert. denied, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970), wherein the Court construed the applicability of the COGSA statute of limitation in the context of a suit for indemnity filed by a charterer against a shipowner for breach of a time charter agreement. Both the charter party and the contract of carriage in Grace Lines were governed by COGSA. Id. at 978. The Fifth Circuit Court of Appeals held that the charterer's cause of action in indemnity against the shipowner was barred by the COGSA one-year statute of limitation, id., explaining that the "fact that [charterer] bases its cause of indemnity on a breach of

the time charter agreement could not under any theory give [charterer] a greater right than that which the cargo claimant . . . had against [owner]." *Id.* at 979. When the cargo claimant in *Grace Lines* filed suit against the shipowner, that suit was time-barred by the COGSA statute of limitation, applicable because COGSA governed the contract of carriage. *See Grace Lines, Inc. v. Central Gulf Steamship Corporation, supra* at 979. Although the charter party in the instant case includes no U.S.A. Clause Paramount, Ayr contends that such exclusion is irrelevant for the following reasons: (1) Atlantic's position that the exclusion of the clause makes *Grace Lines* inapplicable to the instant facts "ignores the central feature of *Grace Lines* which bases the charterer's action on the rights of cargo," *Brief in Support of Third-Party Defendant Ayr Shipping Co., Ltd.'s Motion to Dismiss (Brief of Ayr)* at 7; (2) COGSA applies to the instant cause pursuant to the covering bills of lading, *id.*; and (3) COGSA applies of its own force, *id.* These contentions will be analyzed in inverse order.

*A. COGSA Applies By Its Own Terms*

The assertion that COGSA applies of its own force is derived from Ayr's reasoning that as to a suit by cargo's interests, both Atlantic and Ayr are "carriers", and COGSA was designed to regulate the rights and liabilities between cargo and "carriers". *Brief of Ayr* at 3. The COGSA definition of "carrier" is as follows: " 'carrier' includes the owner or the charterer who enters into a contract of carriage with a shipper." 46 U.S.C. § 1301(a) (1975). The definition is structured in the disjunctive, thereby becoming subject to the interpretation that, in relation to a shipper in one transaction, only one of the owner or charterer may be designated "carrier" and thus invoke attendant COGSA liabilities and rights. *See* Zock, *Charter Parties in Relation to Cargo*, 45 Tulane L.Rev. 731, 746 & n.82 (1971): "The above language [of 46 U.S.C. § 1301(a)] makes it clear that either the shipowner or the charterer may be the carrier, but not both." *Id.* at 746 n.82.

The Court, however, declines to adopt that interpretation of the COGSA definition of "carrier". Research has revealed a paucity of case law providing guidance on who may be designated a COGSA carrier, how that determination must be made, or whether both the owner and charterer may be carriers as to one shipping transaction. Nonetheless, one principle emerges clearly: whoever enters the contract of carriage with the shipper in a given transaction comes within the definition of a "carrier" pursuant to Section 1301(a) of COGSA. *See, e. g., Demsey & Associates v. S. S. Sea Star*, 461 F.2d 1009, 1014–15 (2d Cir. 1972); *Thyssen Steel Corporation v. S. S. Adonis*, 364 F.Supp. 1332, 1335 (S.D.N.Y. 1973); *Wilmotte & Co., Inc. v. Cobelfret Lines, S. P. R. L.*, 289 F.Supp. 601 (M.D.Fla. 1968). If both the owner and the charterer are found to have entered a contract of carriage with the shipper, both can incur COGSA liability in the same shipping transaction as to their respective duties to the shipper. *See, e. g., Yeramex Intern. v. S. S. Tendo*, 595 F.2d 943 (4th Cir. 1979); *Trans-Amazonica Iquitos, S. A. v. Georgia Steamship Co.*, 335 F.Supp. 935 (S.D.Ga.1971); *Tube Products of India v. S. S. Rio Grande*, 334 F.Supp. 1039 (S.D.N.Y.1971); *Aljassim v. S. S. South Star*, 323 F.Supp. 918 (S.D.N.Y.1971). One Court has specifically found that more than one COGSA carrier may be identified in a given shipment, and that the term "carrier" need not be limited to a party to a bill of lading or contract of carriage. *Joo Seng Hong Kong Co., Ltd. v. S. S. Unibulkfir*, No. 78–2439, (S.D.N.Y. Oct. 23, 1979). The *Unibulkfir* Court found that reading Section 1301(a) and Section 1302 together reveals a definition of "carrier" broad enough to include all owners and charterers involved in the carriage of goods at issue. *Id.*

Thus, Ayr's contention that, as to cargo, both Atlantic and Ayr are carriers and thereby incur COGSA liability to cargo is not without foundation in the law. For purposes of the inquiry related to Ayr's motion to dismiss, the Court finds making a determination of which parties are COGSA

carriers unnecessary. The Court merely acknowledges that both Ayr and Atlantic may be carriers as to Arbed. Moreover, the Court notes that such acknowledgement is of little assistance to Ayr in its assertion that because COGSA applies to cargo-carrier relations, the Act applies to the charter party at issue of its own force.

■ The charter party is a separate contract which terms define the rights and liabilities of only the charterer and the owner. *See, e. g., Yeramex Intern. v. S. S. Tendo, supra* at 946. Thus, even if both Atlantic and Ayr are COGSA "carriers" as to Arbed, by its own terms COGSA would apply only to the relations between cargo and carrier, as evidenced by terms of the bills of lading, not to the relations between carriers, as evidenced by terms of the charter party. *See Matsushita Elec. Corporation v. S. S. Aegis Spirit*, 414 F.Supp. 894, 901 (W.D.Washington 1976). The parties to a charter party could agree that bills of lading would govern relations between the charterer-owner as well as the charterer-shipper, *see Nichimen Co., Inc. v. M. V. Farland*, 462 F.2d 319, 328 (2d Cir. 1972). In addition, the parties could agree to incorporate COGSA into the charter party, thereby making COGSA applicable to relations between charterer-owner, *see, e. g., Grace Lines, Inc. v. Central Steamship Corporation, supra.* The parties to the instant charter party made neither of the aforementioned agreements. The applicability of COGSA to the instant charter party would have to have been the result of agreement by the parties to expressly include COGSA; the parties here agreed to expressly exclude COGSA from the charter party. Thus, Ayr's contention that, regardless of the U.S.A. Clause Paramount's being stricken from the Atlantic/Ayr charter party, COGSA and its statute of limitation applies of its own force to the charter party because both Atlantic and Ayr are COGSA "carriers" as to cargo is without merit.

### B. COGSA Applies Through Bills of Lading

■ Ayr also contends that COGSA applies to the charter party pursuant to the covering bills of lading. In support of that contention Ayr refers to two separate provisions of the charter party, clauses twenty-four and forty-four, which respectively provide as follows:

"24. It is also mutually agreed that this Charter is subject to all the terms and provisions of the clauses contained in Clause No. 44.

"Cl.44 *PROTECTIVE CLAUSES*:

The New Both to Blame Collision Clause, the New Jason Clause and Chamber of Shipping War Risk Clauses 1 and 2, as attached, are all to be considered part of this Charter Party, and all Bills of Lading shall be subject to all said clauses.

"The U.S.A./Canadian Clause Paramount as applicable or the Hague Rules as enacted in countries other than U.S.A. and Canada as applicable to be incorporated in all Bills of Lading."

The structure of clause forty-four indicates that only the clauses in the first paragraph, *e. g.,* the New Both to Blame Collision Clause, were intended to govern both the charter party and the contract of carriage as evidenced by bills of lading. The U.S.A. Clause Paramount is referred to in a separate paragraph from the other clauses. Moreover, the language of clause forty-four indicates severability of applicability to the charter party. The clauses listed in the first paragraph are specifically made "part of this Charter Party," as well as being made applicable to the bills of lading, and those clauses were "attached" to the charter party. The U.S.A. Clause Paramount, in contrast, was specifically incorporated into only the bills of lading. Thus, clause twenty-four of the charter party indicates mutual agreement that the charter party itself was to be governed only by the clauses delineated in the first paragraph of clause forty-four. Such construction is supported by reading clauses twenty-four and forty-four together. In clause twenty-four, immediately following the "terms and provisions of the clauses contained in Clause No. 44" language, the U.S.A. Clause Paramount was marked through, indicating ex-

clusion. Thus, the provisions of the charter party indicate that, at least to some degree, the parties thereto intended that different conditions would govern the charter party and the bills of lading. Hence, although COGSA, including its statute of limitation, clearly was intended to govern the contract of carriage between shipper and carrier, the Act apparently was not intended to govern the charter party between Atlantic and Ayr. Ayr's assertion that COGSA applies to the charter party pursuant to the covering bills of lading is, therefore, devoid of merit.

### C. Grace Lines and Rule 14(c) of the Federal Rules of Civil Procedure

■ Grace Lines, the primary authority on which third-party defendant relies to urge dismissal of the instant third-party complaint in indemnity, involved circumstances wherein both the contract of carriage and the charter party expressly were made subject to COGSA and its one-year statute of limitation. Grace Lines, Inc. v. Central Gulf Steamship Corp., supra at 978; see also Francosteel Corp. v. S. S. Tien Cheung, 375 F.Supp. 794, 796 (S.D.N.Y. 1973); Mitsui & Co. (U. S. A.) v. Toko Kaiun Kabushiki Kaisha, 342 F.Supp. 14, 20 (S.D.Tex.1972). The charter party in the instant cause expressly excluded COGSA applicability, and Ayr has failed to convince the Court that COGSA should be impliedly incorporated into that contract. The Court has previously interpreted the holding of Grace Lines to rest on "a fact situation in which both parties [the charterer and the shipowner] have liability based upon the same statutory or contractual duties." Mitsui & Co. (U. S. A.) v. Toko Kaiun Kabushiki Kaisha, supra at 18. Thus, in applying Grace Lines to the instant facts, even though Ayr had COGSA liability to Arbed pursuant to the bills of lading, Liner Bill of Lading ¶ 5, Ayr's liability to Atlantic in this indemnity action is based on a separate contract which does not incorporate COGSA. Cf. Mitsui & Co. (U. S. A.) v. Toko Kaiun Kabushiki Kaisha, supra at 20 (the Court found that stevedore sued in indemnity by carrier had no COGSA liability to

cargo and that stevedore's liability to carrier in indemnity was based on a separate contract).

The Court is particularly persuaded of the inapplicability of Grace Lines to the instant facts by the reasoning of the Southern District of New York in Francosteel Corp. v. S. S. Tien Cheung, supra. In the context of a third-party defendant's motion for summary judgment in an indemnity action, the Francosteel Court analyzed Grace Lines and concluded that it was inapplicable:

> "The plaintiff in Grace Lines brought a timely suit against the charterer, however the charterer's claim for indemnity was interposed against the shipowner after the one year period. The Court of Appeals found that since the right to indemnity arose from the charter, and because the charter was subject to COGSA, the one year statute of limitations operated to bar the charterer's claim. The instant claim is unlike that in Grace Lines, there being no proof before the Court to demonstrate the applicability of COGSA to the charter party between the third-party plaintiff and the third-party defendant."

Francosteel Corp. v. S. S. Tien Cheung, supra at 796.

Ayr contends that if the Court finds Grace Lines inapplicable merely because of exclusion of the U.S.A. Clause Paramount from the charter agreement such a conclusion would demonstrate that the Court ignored the "central feature of Grace Lines which bases the charterer's action on the rights of cargo." Brief of Ayr, supra at 7. Although some language in Grace Lines might be interpreted as supporting Ayr's determination of the central feature of the case, the Court declines to adopt Ayr's assessment. The Fifth Circuit specifically identified the issue in the case as "what effect would the statute of limitation provision of the time charter agreement have relative to the indemnity suit?" Grace Lines, Inc. v. Central Gulf Steamship Corporation, supra at 978. Moreover, the Court's holding was narrow: "We hold that

the indemnity cause of action by [charterer] against [owner] was barred by the statute of limitation under . . . [COGSA]." *Id.* (footnote omitted).

■ This Court finds that to extend *Grace Lines* beyond its facts and thus to bar Atlantic's cause of action in indemnity "would thwart the purpose of Rule 14 of the Federal Rules of Civil Procedure . . ." *Francosteel Corp. v. S. S. Tien Cheung, supra* at 796;[1] *cf. Prudential Lines, Inc. v. General Tire Intern. Co.,* 440 F.Supp. 556, 559 (S.D.N.Y.1977) ("we do not believe that *Grace Lines* should be expanded beyond its particular facts") *id.* Rule 14, in pertinent part, provides as follows:

> "the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences."

Rule 14(c), Fed.R.Civ.P.

The effect on Rule 14 of the language of *Grace Lines* which Ayr characterizes as the "central feature" of that case has been discussed by this Court in the context of a charterer's indemnity action against a stevedore:

> "The last sentence of this quote from *Grace Lines* would imply that indemnity may not be awarded without the support of liability on the part of the indemnitor, [stevedore], to the person injured, [cargo], and since [stevedore] was no longer obligated to [cargo], [stevedore] could not be liable in a cause of action for indemnity by [carrier]. However, Fed.R.Civ.P. 14(c) clearly states that '[text of Rule].' Therefore, the present indemnity suit could not be barred by the failure to show liability owed to [cargo] by [stevedore]."[2]

*Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha,* 342 F.Supp. 292, 296 (S.D.Tex.1972). *Accord, Prudential Lines, Inc. v. General Tire Intern. Co., supra* at 560; *Marubeni-IIDA(A.), Inc. v. Toko Kaiun Kabushiki Kaisha,* 327 F.Supp. 519, 523 (S.D.Tex.1971).

■ The Court therefore finds that the *Grace Lines* decision is distinguishable on its facts from the instant cause, and that to apply *Grace Lines* to the instant facts would contravene the purpose of Rule 14 of

1. The Court finds the *Francosteel* Court's reasoning concerning the purpose of Rule 14 persuasive in the instant fact situation. The *Francosteel* Court, however, made a broader finding than does this Court. The *Francosteel* Court made the following determination: "In any event, the court finds the COGSA period of limitations inapplicable to suits for indemnity. The application of this statute to an indemnification claim would thwart the purpose of Rule 14 of the Federal Rules of Civil Procedure, as well as, the modern trend of authority," *Francosteel Corporation v. S. S. Tien Cheung, supra* at 796. Portions of the *Grace Lines* opinion would seem to preclude this Court from adopting fully the reasoning of the *Francosteel* Court. Hence, this Court finds only that in circumstances where the charter party does not incorporate COGSA, as in the instant cause, the barring of the charterer's indemnity action against the shipowner would contravene the purpose of Rule 14. The Court makes no finding on the relationship between Rule 14 and the COGSA statute of limitation in a case involving a charter party which incorporates COGSA.

2. The quote from *Grace Lines* to which the *Toyomenka* Court made reference is as follows:

> "Central's indemnity right being predicated on the claim of the cargo owner, and the cargo claimant and its insurer, Royal's cause of action against Grace being barred, clearly Central's cause of action for indemnity against Grace would also be barred. To hold otherwise would be to deny Grace its legal defense of limitation; therefore, the motion of Grace to dismiss the impleading petition should have been granted, for once the period of limitation ran on Royal's suit against Grace, no indemnification theory could establish Central's right to receive indemnification from Grace. Indemnity may not be awarded without the support of liability on the part of the indemnitor to the person injured and since Grace was no longer obligated to Royal, Grace could not be liable in a cause of action for indemnity by Central."

*Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha, supra* at 296, *quoting Grace Lines, Inc. v. Central Gulf Steamship Corporation, supra,* at 979. This language from *Grace Lines* is what Ayr relies on in contending that the central feature of *Grace Lines* is that the rights of the charterer are predicated on the rights of cargo. *See* the Court's analysis of that assertion, *supra.*

the Federal Rules of Civil Procedure. Time limitations for indemnity suits between Atlantic and Ayr were never established by their charter party, and the time limit for this indemnity suit will not begin to run until such time as payment may be made on the liability suit between Arbed and Atlantic. The issue of indemnity of course will never arise if Atlantic prevails on the merits of the liability suit. Third-party defendants' motion to dismiss the third-party complaint in indemnity is therefore denied.

### III. AYR SHIPPING CO., LTD.'S MOTION TO STAY ATLANTIC LINES & NAVIGATION COMPANY, INC.'S THIRD–PARTY COMPLAINT PENDING ARBITRATION

 Ayr premises the motion to stay on clause forty-five of the charter party between Atlantic and Ayr. Clause forty-five provides as follows:

"Any dispute arising out of this Contract shall unless the parties agree forthwith on a single Arbitrator be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be Members of the Baltic Exchange, one to be appointed by each of the parties with power to such Arbitrators to appoint an Umpire who shall be a Member of Baltic Exchange. Any claim must be made in writing and Claimants and Arbitrator appointed within thirteen months of redelivery of the vessel, and where this provision is not complied with the claim shall be deemed to be waived and absolutely barred."

Charter Party, Cl. No. 45. The Court's authority to grant a stay pending arbitration arises out of Section 3 of the United States Arbitration Act, 9 U.S.C. § 3 (1970). The act has been characterized as "reversing centuries of judicial hostility to arbitration agreements . . . ." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974). Its purpose is to allow parties to a contract to select a less costly alternative to litigation, and then to proceed in that alternative forum without delay imposed in the courts.

*See Scherk v. Alberto-Culver Co., supra* at 510–11; *Prima Paint Corporation v. Flood & Conklin*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In addition, the intent of Congress in passing the Act was to elevate arbitration agreements to the same status as other contracts. *See Scherk v. Alberto-Culver Co., supra* 417 U.S. at 511, 94 S.Ct. 2449. The Court's task in resolving a Section 3 motion to stay pending arbitration has been well defined to conform to congressional purpose in passing the Act: inquiry is limited to "issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corporation v. Flood & Conklin, supra* at 404, 87 S.Ct. at 1806. In the instant cause that inquiry focuses on whether Ayr has waived opportunity to arbitrate by not complying with the time limitation specified in clause forty-five of the time charter, and whether Ayr is in "default" under Section 3 of the Act.

 "The right to arbitration, like any other contract right, can be waived." *Cornell & Company v. Barber & Ross Company*, 123 U.S.App.D.C. 378, 379, 360 F.2d 512, 513 (D.C.Cir.1966) (footnote omitted). Once a party has waived the right to arbitrate, that party may be said to come within the constraints of Section 3 which provides that the Court may grant an application for a stay "providing the applicant . . . is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (1970). Waiver has been found in circumstances where the applicant has actively participated in a lawsuit or has taken other action inconsistent with the right to refer a dispute to arbitration. *See, e. g., Cornell & Company v. Barber & Ross Company, supra* 123 U.S.App.D.C. at 379, 360 F.2d at 513; *American Sugar Refining Co. v. The Anaconda*, 138 F.2d 765, 767 (5th Cir. 1943); *Radiator Specialty Co. v. Cannon Mills*, 97 F.2d 318, 319 (4th Cir. 1938). Actions constituting waiver may include, *inter alia*, the applicant's engaging in some combination of filing an answer, setting up a counterclaim, pursuing discovery, and moving for continuance prior to moving for a stay pending arbitration. *See, e. g., Cornell & Company v. Barber & Ross Company, su-*

pra; *Radiator Specialty Co. v. Cannon Mills, supra.* One purpose of the United States Arbitration Act was to "facilitate the settlement of disputes and avoid the delay caused by litigation," *Radiator Specialty Co. v. Cannon Mills, supra* at 319; therefore, a party may be found in default pursuant to Section 3 of the Act if the claimed right to arbitration would result in furthering delays, *see Radiator Specialty Co. v. Cannon Mills, supra.*

Although the right to arbitration may be waived, in light of the strong federal policy favoring arbitration, *see Demsey & Associates v. S. S. Sea Star, supra* at 1017, some courts have found that activity inconsistent with the right to arbitration, without more, is insufficient to constitute waiver. *See Demsey & Associates v. S. S. Sea Star, supra* at 1018; *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968). The additional element required is that of resultant prejudice to a party. *See Demsey & Associates v. S. S. Sea Star, supra* at 1018; *Carcich v. Rederi A/B Nordie, supra* at 696; *International Minerals & Chemical Corporation v. M/V Achilleus*, 1971 A.M.C. 1161, 1163 (S.D.N.Y.1971). "Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration." *Carcich v. Rederi A/B Nordie, supra* at 696 n.7, *citing Kulukundis Shipping Co. v. Amtorg Trading Corporation*, 126 F.2d 978, 898 n.40 (2d Cir. 1942) *and Graig Shipping Co. v. Midland Overseas Shipping Corporation*, 259 F.Supp. 929 (S.D.N.Y.1966).

■ "The right to a stay of proceedings under § 3 of the Arbitration Act presents a somewhat different question [from that of waiver]." *American Locomotive Co. v. Chemical Research Corporation*, 171 F.2d 115, 121 (6th Cir. 1948). "Under the Act arbitration is not a bar, and in order to obtain the benefits of the provisions of § 3 thereof further action [other than pleading the right of arbitration as an affirmative defense] is necessary." *American Locomotive Co. v. Chemical Research Corporation, supra* at 121 (citation omitted); *accord,*

*Demsey & Associates v. S. S. Sea Star, supra* at 1017. Said further action may consist of moving for a stay pending arbitration or moving for severance of the third-party claim and for arbitration of the severed claim. *See Demsey & Associates v. S. S. Sea Star, supra* at 1017.

Atlantic contends that Ayr has waived the right to arbitrate by its delay in requesting arbitration beyond the thirteen month limitation provided in clause forty-five of the charter party. The specific language on which Atlantic relies provides as follows:

"Any claim must be made in writing and Claimants and Arbitrator appointed within thirteen months of redelivery of the vessel, [or] . . . the claim shall be deemed to be waived and absolutely barred."

In addition, Atlantic contends that if the motion to stay is granted, Atlantic will be prejudiced because Ayr's responsibility for any damages for which Atlantic might be found liable would not be resolved in the same proceeding with the liability issues; Ayr contests those contentions and asserts that nothing indicates that the parties intended that time would be of the essence concerning the arbitration clause, and that the thirteen-month limitation must be viewed in a rational manner in the context of the instant litigation.

■ The Court notes that the thirteen-month limitation in the arbitration clause had expired long before Ayr received notice of the instant litigation. In such circumstances, finding waiver or default on the basis of Ayr's "delay" would strain credulity as well as the true meanings of those terms. The Court finds nothing to indicate that the parties to the charter party intended that time was to be of the essence with respect to the arbitration clause. *See Texas Eastern Transmission Corporation v. Barnard*, 285 F.2d 536, 539 (6th Cir. 1960); *In Re Utility Oil Corporation*, 10 F.Supp. 678, 680–81 (S.D.N.Y.1934). Moreover, Ayr has not delayed in moving for a stay pending arbitration, nor has prejudice resulted to any party. *See, e. g., Demsey & Associ-*

ates v. S. S. Sea Star, supra at 1017–18. Ayr filed its motion to stay, see Demsey & Associates v. S. S. Sea Star, supra at 1017 and American Locomotive Co. v. Chemical Research Corporation, supra at 121, simultaneously with its answer to the third-party complaint, and asserted its right to arbitration in the answer. Consistent with the principle that waiver is not to be inferred lightly, see Carcich v. Rederi A/B Nordie, supra at 696, the Court finds that Ayr has not waived its right to refer the dispute to arbitration. Further, the Court finds that Ayr is not in default pursuant to Section 3 of the United States Arbitration Act. The third-party defendant's motion to stay the third-party complaint pending arbitration is therefore granted.