**TOYOMENKA, INC.**

v.

**TOKO KAIUN KABUSHIKI KAISHA.**

Civ. A. No. 70-H-1246.

United States District Court,
S. D. Texas,
Houston Division.

April 12, 1972.

R. M. Sharpe, Jr., McClure & Sharpe, Houston, Tex., for plaintiff.

J. E. Davey, Eikel & Goller, Houston, Tex., for defendant.

G. Byron Sims, Brown & Teed, Houston, Tex., for third party.

*Memorandum and Order:*

SINGLETON, District Judge.

Plaintiff, Toyomenka, Inc., sued Toko Kaiun Kabushiki Kaisha (hereinafter Toko), as charterer and operator of the SS EGLE, for alleged damage to Toyomenka's shipment of steel pipe delivered to Houston on or about December 3, 1968. There was a bill of lading for the cargo issued by Toko to Toyomenka wherein Clause 1(a) of the bill of lading is subject to the Cogsa one year statute of limitations through a clause paramount. 46 U.S.C. § 1303(6). On or about December 8, 1968, Texports Steve-dore Company (hereinafter Texports) discharged the cargo at Houston pursuant to an oral agreement with Toko.

On January 15, 1969, Toyomenka advised Toko's agent of its intention to file a claim for damages to the cargo. Thereafter, Toyomenka's insurance carriers, Toplis & Harding, Inc. (Toplis) settled their claim and are now subrogated to Toyomenka's rights. On August 11, 1969, by letter, Toplis requested of Toko its first extension of the one-year time limit for filing a suit. This request and four similar subsequent requests were granted by Toko alone extending the time for filing up to and including November 18, 1970. Toko never contacted Texports about the requests nor the granted extensions. On November 18, 1970, a suit was filed in the name of Toyomenka against Toko. On December 30, 1970, Toko filed a third-party claim against Texports in the nature of an indemnity action.

It is unquestioned that the Cogsa statutory time limitations may be waived by the parties. United Fruit Co. v. J. A. Folger Co., 270 F.2d 666 (5th Cir. 1959).

Texports has filed a motion for summary judgment arguing that they are a third-party beneficiary of the bill of lading which includes a one-year limitation for the filing of suits (Clause 19 of the bill of lading) [1] and also that they are entitled to the protection of Cogsa's one-year statute of limitations, 46 U.S.C. § 1303(6), by way of its incorporation in the bill of lading and Texports inclusion in the definition of carrier in Clause 24 [2] of the bill of lading. Tex-

---

1. Clause 19:
   "In any event the carrier and the ship shall be discharged from all liability in respect of loss, damage, delay, or any other claim concerning the goods of their carriage, including, but not limited to, any claims by preceding or connecting carriers for contribution or indemnification for claims aserted against or paid by such other carriers, unless suit is brought within one year after the delivery of the goods or the date when the goods should have been delivered. Suit shall not be deemed brought until jurisdiction has been obtained over the carrier or ship by service of process or by an agreement to appear. Nothing shall be deemed a waiver of any of the provisions of this clause or clause 18 except an express written waiver specifically referring thereto and signed by the carrier or its authorized agent."

2. Clause 24:
   "In addition to those hereinabove listed as included in the term 'carrier', the owners, managers, charterers, master,

ports contends that because of the one-year time bars established in the bill of lading and Cogsa that the third-party claim against it is barred because to hold otherwise would be to strip it of a "valuable right" given it as a third-party beneficiary to the bill of lading.

■ The language of the bill of lading is unambiguous in Clause 24 and unequivocally makes Texports a third-party beneficiary: " . . . the . . . *stevedores,* . . . shall have the benefit of all privileges and of all exemptions, immunities from and limitations of liability granted to carrier in this bill of lading . . .". Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); Carle & Montanari Inc. v. American Export Isbrandtsen Lines, Inc., 275 F. Supp. 76 (S.D.N.Y.1967); aff'd per curiam 386 F.2d 839 (2nd Cir. 1967); cert. den. 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968).

■ The classic definition of a beneficiary is clearly stated by Simpson and was substantially paraphrased in the Restatement of Contracts § 133:

"There are only two types of third parties who are permitted under American law to enforce a promise. They are (1) the donee beneficiary, and (2) the creditor beneficiary. If A for a consideration exacts a promise from B to render a stated performance to C, intending thereby to confer a gift upon C, C is a donee beneficiary entitled to sue B on the promise. It is the intent or purpose of the promisee, A, to exact a promise and ultimate performance as a gift to C

that controls, not the purpose of the promisor, B. B's purpose in promising is to obtain the consideration furnished by the promisee, A, as the agreed exchange. The promisee's intent to obtain a gift promise for C's benefit will appear from the terms of the promise which he exacted. If by that promise the performance is to be rendered directly to and for the third person, C, he alone will be benefitted, not A. A's only purpose, then, is to confer a gift upon C. Where, on the other hand, the promised performance is to be rendered to the promisee, A, no inference of a gift promise for C's benefit is possible no matter how much C may collaterally benefit therefrom. Here the promisee's purpose is to secure the performance for himself; hence C is an incidental beneficiary not entitled to sue." Simpson, Contracts § 116 (1965 ed.)

In the economic circumstances surrounding the issuance of the bill of lading, it would be difficult for a court to assume or hold a gift to Texports was intended by either party to the bill. Therefore, Texports is not a donee beneficiary.

■ In regard to the specific clause or promise in question here, Toko was contracting for its own benefit as the "carrier."

Therefore, Texports acquired only the interest of an incidental third-party beneficiary. An incidental beneficiary acquires no right to sue on the promise: " . . . in all cases in which by the bargained-for promise the promisor undertakes a performance which is to be rendered *to the promisee,* all third par-

---

officers and crew members of the ship and the carrier's agents, servants, officers, stevedores, longshoremen, representatives, contractors, terminal operators or others dealing with cargo destined for or discharged from the vessel or used, engaged or employed by the vessel and the carrier, and any substituted vessel or carrier, whether any of them be acting as carrier or bailee or as an independent contractor, shall have the benefit of all privileges and of all exemptions, immunities from, and limitations of liability

granted to, carrier in this bill of lading, or by laws applicable to the carrier, including, but not limited to, those limitations set forth in clauses 17 and 19 of this bill of lading, and the carrier shall be deemed to contract for the benefit of all such parties in this regard. Protection extended to third persons in the foregoing are granted to the extent permitted by law or contract, but shall in no event give rise to any liability of the carrier to such third person."

ties are incidental beneficiaries, irrespective of the amount of benefit they would derive from performance." Restatement Contracts § 147.

The facts of this case, in a light most favorable to the stevedores, could possibly create a creditor beneficiary status in Texports. The test of the intentions of the parties to the bill of lading is applied to the criteria for determining a creditor beneficiary. Simpson explains the test in the following way:

> "Where a promisee in a contract owes a debt or obligation to a third party and contracts for a performance to be rendered to the third party with the intention that such performance will discharge the debt thus owed by the promisee, the third party is a creditor beneficiary of the promise, entitled to enforce it in an action at law. Here it is plain that there is no intention to benefit the third party in the sense of conferring a gift upon him as in the case of the donee beneficiary. The promisee desires to secure the discharge of his own duty to the third party, and so to benefit himself. Yet 'intent to benefit' is very broadly asserted in the cases as the reason and test of giving the third party the right to enforce the promise. In the creditor beneficiary situation, then, intent to benefit is used in a different sense than in the donee case. Even though the promisee's motive or purpose in buying the promise was not to benefit his creditor but rather himself, yet it was clearly his expressed intent that the third person shall receive the benefit of performance. So intention to benefit in the creditor beneficiary case means an intention to create in the third party an enforceable right to the performance for which the promisee bargained and furnished the consideration." Simpson, Contracts § 116 (1965 ed.)

Since it is not necessary that a donee or creditor beneficiary be identified or in existence at the time of the contracting, the fact that Toko's indebtedness to Texports occurred after the date of the present bill of lading but was contemplated at the time of the contracting for the bill of lading is sufficient to make Texports a creditor beneficiary.

The significance of classifications of beneficiaries is that certain rights and privileges have been accorded to certain classes of beneficiaries. The classification relevancy to the instant case is the rule on variance of the contract:

> "§ 143. VARIATION OF THE PROMISOR'S DUTY TO A CREDITOR BENEFICIARY BY AGREEMENT OF PROMISOR AND PROMISEE.

> A discharge of the promisor by the promisee in a contract or a variation thereof by them is effective against a creditor beneficiary if,

> (a) the creditor beneficiary does not bring suit upon the promise or otherwise materially change his position in reliance thereon before he knows of the discharge or variation, and

> (b) the promisee's action is not a fraud on creditors." Restatement Contracts § 143.

Therefore, it matters not whether Texports is termed an incidental or a creditor beneficiary for it would not be entitled to notification of the variance, i. e., time extensions by Toko unless Texports brought suit or materially changed its position before notice of the variance. On the facts presently before the court, Texports has not shown any material change in its position in reliance on the original contract terms.

This intricate maze of legal verbosity would perhaps be more relevant if cargo, Toyomenka, had sued Texports directly after the extended time period; but they did not. Cargo sued the carriers, Toko, directly within the prescribed time extension, thus making the original suit for liability a claim within the statute of limitations as agreed by the parties. This line of reasoning would also be

more significant if the third-party claim here in question was based on a contract subject to Cogsa. But it is not. The common law indemnity action is based on an oral contract between Texports and Toko.

In clause 24 of the bill of lading, Toko is clearly given the right to contract with cargo for the listed carriers including the stevedores: "the carrier shall be deemed to contract for the benefit of all such parties in this regard." The word carrier could be construed to mean *all* "carriers," but this would be a strained and an impractical business construction. The term "benefit" could be construed as meaning only the items or terms the stevedore considers beneficial to his position, but this construction would also bring about an illogical and impractical result. The only supportable interpretation of Clause 24 is that the party noted as a carrier (i. e. Toko) who actually signed the bill of lading and was specifically known by the cargo at the time of executing the bill of lading is the party given the authority to act as the agent for all the parties in the bill of lading. Consequently, as is discussed later, Toko did not infringe on Texports' rights for the indemnity action is independently supportable.

Texports has relied heavily upon the case of Grace Lines, Inc. v. Central Gulf Steamship, 416 F.2d 977 (5th Cir. 1969), cert. den. 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970). In . Grace Lines, supra, cargo's insurer sued the shipowner and the charterer directly for damage to the cargo. Central who chartered the boat from Grace filed an indemnity claim against Grace. The contract between Central and cargo was made subject to Cogsa's one-year statute as was the charter between Central and Grace (this is not the situation in the instant case where the oral stevedore contract is not subject to Cogsa). Central extended the time to file suit beyond that agreed to by Grace. Thus, the suit by cargo against Grace was dismissed as time-barred. The Fifth Circuit also held that Central's suit for indemnity should be dismissed as barred by Cogsa's one-year limitation:

"Central's indemnity right being predicated on the claim of the cargo owner, and the cargo claimant and its insurer, Royal's cause of action against Grace being barred, clearly Central's cause of action for indemnity against Grace would also be barred. To hold otherwise would be to deny Grace its legal defense of limitation; therefore, the motion of Grace to dismiss the impleading petition should have been granted, for once the period of limitation ran on Royal's suit against Grace, no indemnification theory could establish Central's right to receive indemnification from Grace. Indemnity may not be awarded without the support of liability on the part of the indemnitor to the person injured and since Grace was no longer obligated to Royal, Grace could not be liable in a cause of action for indemnity by Central. United Air Lines, Inc. v. Wiener, 335 F.2d 379, 403 (9th Cir. 1964); American Tobacco Co. v. Transport Corp., 277 F.Supp. 457 (E.D.Va.1967)." *Grace, supra* at 979.

█ The last sentence of this quote from *Grace Lines* would imply that indemnity may not be awarded without the support of liability on the part of the indemnitor, Texports, to the person injured, Toyomenka, and since Texports was no longer obligated to Toyomenka, Texports could not be liable in a cause of action for indemnity by Toko. However, Fed.R.Civ.P. 14(c) clearly states that "a third-party plaintiff [Toko], may bring in a third-party defendant [Texports] who may be wholly or. partly liable, either to the plaintiff [Toyomenka] or to the third-party plaintiff [Toko], by way of remedy over, contribution, or otherwise on account of the same transaction . . .." Therefore, the present indemnity suit could not be barred by the failure to show liability owed to Toyomenka by Texports.

Texports has surely misplaced its reliance on *Grace Lines*, for in the instant case the suit of primary liability to cargo by Toko is not time-barred, but was filed within the extended period granted by Toko. Therefore, in the case at bar the theory of the lower court in *Grace Lines, supra* at 978, would be cogent:

"The trial court held that the cause of action for indemnity was not barred because it had not accrued. States Steamship Company v. American Smelting and Refining Company, 339 F.2d 66 (9th Cir. 1964); Lyons-Magnus Incorporated v. American-Hawaiian SS Co., 41 F.Supp. 575 (S.D.N.Y.1941); St. Paul Fire and Marine Insurance Co. v. United States Lines Company. 258 F.2d 374 (2nd Cir. 1958).

"The cases cited support the rule that the ordinary cause of action for indemnity would be separate from the suit for initial liability insofar as time bar periods are concerned. The right of indemnity would accrue once payment was made, and the statute of limitation on an action to enforce that right would not begin to run until payment was made. cf. States Steamship Co. v. American Smelting and Refining Company, supra."

Texports further cites and relies on *Grace Lines* for the proposition that because Toko was unauthorized to extend the time limits it interferred with Texports' rights, as the indemnitor, and accordingly, increased the indemnitor's risk or liability; the indemnity agreement thus being violated, the indemnitor is released from his duty to indemnify. *See Grace Lines, supra* at 979 footnote 5.

However, in the case at bar Texports rights have not been infringed for the increase in time extended to file was not used *against* Texports, for cargo never sued Texports. Thus, Texports was not exposed to a greater risk or in terms of the third-party beneficiary discussion above, Texports did not substantially change its position, for time limitations were never established between Toko and Texports for indemnity suits between them. Indeed, the indemnity suit time limits do not begin to run until payment has been made on the initial liability suit.

Since Texports' rights have not been infringed and it has not shown any substantial change in its position, Fed.R.Civ.P. 14(c) will apply to allow impleading of Texports as a third party. This court has recently reviewed the history of Fed.R.Civ.P. 14 and its historical development from Admiralty Rule 56. *See* Marubeni-Iida, Inc. v. Toko Kaiun Kabushiki, 327 F.Supp. 519 (S.D.Tex. 1971). In light of the precedent discussed in that opinion, judicial efficiency and the absence of established prejudice to the third-party defendant dictate that this indemnity action be allowed where all claims arising from one event can be settled under one cause. Even under a laches defense, Texports has not shown inexcusable delay and detriment and, therefore, could not defeat the suit.

In Molnar v. Gulfcoast Transit, 371 F.2d 639, 642 (5th Cir. 1967), the Fifth Circuit declared that "[a]lthough frequently classified as a separate element, the inexcusability of the delay, * * is closely intertwined with the predominant factor of detriment or lack of detriment, and what is a thin excuse may turn out to be bearable because no harm is suffered." Akers v. State Marine Lines, Inc., 344 F.2d 217, 220 (5th Cir. 1965), held that unexcused delay without prejudice would not bar a suit. *See* Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir. 1970).

Unfortunately, the commercial necessity of bills of lading between carriers and cargo is a business reality that may sometimes be harsh on the less acumen third-party stevedore. If such be the case, it is the stevedore himself who must contract against results he does not desire.

Accordingly, Texports' motion for summary judgment is denied.