HERCULES, INC., Plaintiff,

v.

STEVENS SHIPPING CO., INC., et al., Defendants,

DETCO TOWING CO., INC., Defendant-Appellee,

v.

AETNA CASUALTY & SURETY CO., Intervenor-Appellant.

HERCULES, INC., Plaintiff,

v.

STEVENS SHIPPING CO., INC., et al., Defendants,

ESCAMBIA TREATING CO., Defendant-Appellant,

v.

DETCO TOWING CO., INC., Defendant-Appellee.

Nos. 78–1505, 78–1887.

United States Court of Appeals, Fifth Circuit.*

Feb. 22, 1983.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

George D. Gabel, Jr., Jacksonville, Fla., H. Edward Moore, Jr., Pensacola, Fla., for Escambia Treating Co.

Allen F. Campbell, Brunswick G. Deutsch, New Orleans, La., Albert Fendig, Jr., Brunswick, Ga., for Aetna.

Gustave R. Dubus, II, Savannah, Ga., for Detco Towing Co., Inc.

Before GODBOLD, Chief Judge, BROWN, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, JR., GARZA**, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK and WILLIAMS, Circuit Judges.***

JOHN R. BROWN, Circuit Judge:

Escambia[1] sold approximately 4,350 telephone poles for delivery in Puerto Rico. As part of the contract, Escambia had to arrange transportation. On April 25, 1975, Escambia entered into a contract with Hercules described as a charter of the barge HERWOOD for transportation of the poles from Brunswick, Georgia to San Juan, Puerto Rico. Two days earlier, on April 23, 1975, Hercules amended a long-term contract with Detco for the towage of the barge HERWOOD. Acting for Escambia, Stevens loaded the poles aboard the barge. The barge and tug set sail. A noticeable list to port developed. Detco, acting with advice of its chosen naval experts, attempted to compensate by ballasting several

---

** Judge Garza participated in the hearing and in the panel opinion but took senior status on July 7, 1982 and is not participating in the en banc decision.

*** Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision.

Judges Garwood, Jolly and Higginbotham joined the Court after submission and oral argument but do not choose to participate.

1. The cast of characters is:

Escambia: Escambia Treating Co., the owner and shipper of the goods.

Hercules: Hercules, Inc., the owner of the barge HERWOOD

Detco: Detco Towing Co., Inc., owner and operator of the tug TRACY D

Stevens: Stevens Shipping Co., Inc., the stevedore

Aetna: Aetna Casualty and Surety Company, the cargo underwriter on the cargo of poles.

tanks, but to no avail. After refueling and leaving Puerto Plata, Dominican Republic, the barge capsized on June 29, 1975, losing its cargo of poles and sustaining substantial damage to the hull. And thereby hangs this tale.

In the usual welter of complaints, cross-complaints, counterclaims and impleaders, two distinct claims are asserted. The first is the claim by Hercules for physical damage to the barge HERWOOD. The second is the claim of Aetna (Escambia's subrogated cargo underwriter) for loss of the cargo of poles.

In the first claim, Hercules lashed out against all, naming Stevens the stevedore, Detco, the tug TRACY D, and Escambia the shipper. Escambia cross-claimed against Detco and the tug TRACY D and Stevens, seeking indemnity and asserting that, if it were held liable on Hercules' claim, then legal responsibility lay on the impleaded cross-defendants, Detco, the tug, and Stevens. After first, on summary judgment, dismissing Hercules' claim against Detco for failure to bring suit within the contract one year period [2] the District Court then, on summary judgment, dismissed Escambia's cross-claim for indemnity on the ground that it was also thereby time barred. This brings into question as the only enbancworthy issue the continued vitality of our decision in *Grace Lines v. Central Steamship Corp.*, 416 F.2d 977 (5th Cir.1969), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970).

**2.** Left still pending was Hercules' claim against Escambia. This means dismissal of Escambia's cross-claim is now a very live issue, even though Hercules has not appealed the dismissal of Detco and the tug TRACY D and its correctness is not before us.

**3.** The whereas inducement clause stated Escambia's desire "to transport its cargo ... between Brunswick, Georgia and San Juan" and the ownership of the barge HERWOOD by Hercules "which would be suitable for the transporting of such cargo ..." and the "availability of ... tug services from a third party ... which would be suitable for the towing ..." and the mutual desire of the two parties to contract "for the above transport purposes." Article I provided:
> [Hercules] agrees to provide, and [Escambia] to hire, the services of [Hercules']

The District Court by separate orders also dismissed Aetna's claim for cargo damage. We reverse this order and the denial of Escambia's claim for indemnity.

### The Escambia-Hercules Charter Party Agreement

Escambia arranged for delivery of the poles by chartering the barge HERWOOD from Hercules.[3] The parties agreed in Article IV *Rates* that the "rate for the use of the vessels in the movement of the cargo shall be $25.75 per short ton ..." (emphasis added) Article V incorporated Exhibit "B" entitled "Hercules Terms and Conditions Applicable to Charters", the most significant of which was paragraph 9 [4], extending to both Hercules and the tug the benefit of all exemption from, and limitation of, liability statutes and specifically COGSA.

### The Hercules-Detco Towing Agreement

Prior to the Escambia-Hercules charter party agreement, Hercules in November 1974 had entered into a long-term towage contract with Detco. This contract was amended on April 23, 1975, to provide specific towage rates for voyages made on behalf of Escambia. The contract, as amended April 23, 1975, provided that for all trips on behalf of Escambia for cargoes of telephone poles the daily rate should be $2200 instead of $2400. It expressly provides that *"Tower [Detco] agrees to per-*

> barge ... together with the services of a tug boat, suitable for the towing tasks herein required, namely, the transporting of cargo ... of telephone poles ... from Brunswick, Georgia to San Juan, ...

**4.** Paragraph 9 provides:
*Limitation of Liability:*
It is agreed that Owner [Hercules] and the tug, her operators, agents, shall have the benefit of all exemption from, and limitation of, liability to which an Owner of a vessel is entitled under the Limitation of Liability Statutes of the United States and that they shall also have all the rights and immunities and exemptions that are accorded to a ship and to a carrier under the Carriage of Goods by Seas Act (COGSA), (Title 46, U.S.C., as amended).

form the towage service described ..." Of greatest significance is paragraph (8), which extended to Tower and the tug, her owners, etc., all exemptions provided under limitation of liability statutes and the rights, immunities and exemptions from liability under the Carriage of Goods by Seas Act.[5] These incorporated statutory defenses or rights were invoked "notwithstanding that this agreement involves towage rather than the carriage of cargo ..." and the express agreement that the contract, "... shall likewise be construed as a contract for towage service and shall not be construed as a charter of the Tug or be or give rise to a personal contract." Paragraph (12) also provided a one year period of limitations for claims.[6]

### The Litigation

On May 11, 1977, almost two years after the occurrence, Hercules filed suit for damage to the barge HERWOOD against Escambia, Detco, the tug TRACY D, and Stevens, alleging that the damage to the barge was due to improper loading. Aetna, asserting its cargo claim as subrogee of Escambia, moved on July 7, 1977 to intervene, claiming that the loss of cargo was caused by the negligence of Detco, its tugs and Stevens, the stevedore. Both Detco and Stevens moved to dismiss Aetna's intervention on the basis of the one year COGSA limitation on suits as incorporated under Paragraph 9 of the charter party. 46 U.S.C. 1303(6).[7]

On August 15, 1977 Escambia cross-claimed against Detco, the tug TRACY D and Stevens for indemnity as to the action filed by Hercules for damage to the barge HERWOOD.[8] Escambia subsequently filed a counterclaim against Hercules for the freight charges and a third-party complaint against Aetna for refusal to defend under a comprehensive general liability policy.

### Disposition in the District Court

On September 28, 1977 the District Court granted Detco's motion to dismiss Aetna's petition of intervention. The basis for this decision was the one-year limitation provided by COGSA which was incorporated by paragraph 9 into the charter party. (See note 4, *supra*.)

In opposing the dismissal of its petition to intervene, Aetna urged that the agreement between Escambia and Hercules was one of towage to which COGSA did not apply. As to the Hercules/Escambia charter party, Aetna contended that Paragraph 9 (see note 4, *supra*), referring to all the "rights and immunities" was an incorporation only of § 4 of COGSA, 46 U.S.C. § 1304, entitled "Rights and Immunities of Ships and Carrier", whereas the one-year limitation provi-

---

**5.** (8) It is agreed that TOWER and the Tug, her owners, operators, agents and charterers shall have the benefit of all exemptions from, and limitations of, liability to which an owner of a vessel is entitled under the Limitation of Liability statutes of the United States. TOWER shall also have all of the rights, immunities and exemptions from liability that are accorded to a vessel and to a carrier under Title 46, USCA Section 1304 (Carriage of Goods by Sea Act) which provisions are hereby incorporated herein by reference as though set forth in full. This Agreement, by contractual stipulation contained in this Paragraph, shall have effect subject to the principles, provisions and judicial interpretation of said Title 46, USCA Section 1304 notwithstanding that this agreement involves towage rather than the carriage of cargo. This Agreement shall likewise be construed as a contract for towage service and shall not be construed as a charter of the Tug or be or give rise to a personal contract.

**6.** Paragraph (12) provides in part:

Tower and the Tug shall be discharged from all liability in respect of loss or damage claims arising hereunder unless suit or action is brought within one year after delivery of the Tow and cargo aboard it, if any, or within one year after the date when the Tow and cargo aboard it, if any, should have been delivered. . . .

**7.** Section 1303(6) provides:

In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered:

**8.** Escambia also filed a third-party complaint against National Cargo Bureau, Inc. and Charles T. Theus, Inc. which cuts no present figure.

sion is found under § 3 of COGSA (see note 7, *supra*). From this, Aetna deduced that the charter party did not contain a sufficiently expressed statement that the parties intended to incorporate the one-year limitation. As to the towage agreement, Aetna argued that the incorporation of COGSA was an invalid and indirect method of circumventing the *Bisso* doctrine.[9] In its filed memorandum, Aetna first raised the issue that it was a third-party beneficiary to the Hercules-Detco towage contract.[10] Escambia, in its crossclaim against Detco, also indicated that it was a third-party beneficiary to this towage contract.[11] In replying to Aetna's opposition to the dismissal of its intervention, Detco urged that, if the charter party did not create a one-year limitation by incorporation of COGSA, the one year provision in paragraph (12) of the towage agreement alone provided a defense to Detco since Escambia and its subrogee Aetna were barred as third party beneficiaries.

In response to Aetna's motion for reconsideration based on the fact that discovery had not yet been completed, the District Court on January 23, 1978 adhered to its dismissal of Aetna's petition to intervene. But it articulated a different rationale than that stated on September 28, 1977 since the discovery evidence raised factual issues "concerning the intent of the contracting parties in relation to the COGSA incorporation provision of the Escambia-Hercules agreement. [See note 4, *supra*]. Thus, the dismissal of the intervenor's petition cannot be based on that contract provision."

Instead, the Court accepted Detco's argument that Aetna, as subrogee of Escambia, was a third-party beneficiary of the Detco-Hercules towage agreement and thus bound by paragraph 12 (see note 6 *supra*) of the towing contract fixing a one year limitation for claims. The Court also rejected Aetna's position that the requirement in the towing contract that all claims be brought within one year of expected delivery was exculpatory and therefore invalid under *Bisso*. Approximately one month after denying Aetna's motion to reconsider the dismissal of its petition for intervention, the District Court granted summary judgment in favor of Detco in the original complaint by Hercules and also on Escambia's crossclaim for indemnity. Both motions were granted on the basis of the one year limitation period in the towage agreement, see note 6 *supra*, Hercules being a direct party and Escambia a third-party beneficiary.[12] Both Aetna and Escambia appealed.[13]

### Arguments on Appeal

In its appeal, Escambia argues that its claim against Detco was one for indemnity,

9. The Bisso doctrine, reduced to its simplest form, is a judicial rule, based on public policy, which generally invalidates contracts releasing towers from all liability for their negligence. *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, 1955 A.M.C. 899 (1955)

10. "It [towage agreement] clearly shows that both parties intended that Escambia have the benefit of the performance of the towage services."

11. Paragraph 7 of Escambia's crossclaim against Stevens and Detco states:

Thereafter, pursuant to the agreement between HERCULES, INC. and ESCAMBIA ..., Plaintiff arranged with DETCO TOWING to provide the O/S TRACY D to provide towing services, and ESCAMBIA ... was a third party beneficiary of the agreement with said independent contractors who had the duty to provide the said vessel and crew needed for the purpose of carrying out the towing of said barge.

12. The Court, pursuant to F.R.Civ.P. 54(b), subsequently certified as final the dismissal of Aetna's intervention and the granting of Detco's motion for summary judgment against both Hercules and Escambia.

13. Hercules filed notice of appeal but did not pursue it further. This left several claims outstanding including: Hercules' complaint against Escambia for hull damage; Escambia's counterclaim against Hercules for the cost of freight; Stevens' cross-claim against Detco, the tug, and Escambia; Stevens' counterclaim against Hercules; Escambia's third-party complaint against Aetna; Escambia's cross-claim against Stevens; and Escambia's third-party complaints against National Cargo Bureau Inc., and Charles T. Theus, Inc. On February 22, 1978, the District Court granted a stay of the proceedings as to any trial on the merits pending appeal by Aetna but allowed discovery to continue.

not damages, and was misconstrued by the lower court.[14] Since Escambia had not yet been found liable to Hercules for damage to the barge, its claim for indemnity had not accrued and therefore could not be barred by the one-year limitation in the towage agreement. Escambia also attacked the District Court's finding that Escambia was bound as a third-party beneficiary to the Hercules/Detco towing agreement.

Aetna's appeal contested the District Court's finding that, standing in Escambia's shoes, it was bound by the Hercules/Detco towing contract as a third-party beneficiary. Aetna also contended that its action for the cargo loss rested not on the contract to tow, but on the negligent performance of the "implied obligation to tow the barge properly and safely" and perhaps also on breach of the implied warranty of workmanlike performance (WWLP). Aetna reasoned that the contractual one-year limitation for claims in the towage agreement of which Escambia had no prior knowledge did not control a tort approach and therefore third-party beneficiary analysis was inappropriate. Instead, Aetna argued that a claim for negligent towage is governed by the maritime doctrine of laches.

In response to these arguments, Detco reasserts its defense based on the language of Paragraph 9 of the charter agreement providing for extension of COGSA benefits to both the barge and the tower. As to the towage agreement, Detco argues that Escambia and Aetna, claiming to be third-party beneficiaries, must be subject to the defenses of the contract.

Lastly, to rebut Escambia's argument that its claim was one for indemnity, Detco relies on this Court's opinion in *Grace Lines, Inc. v. Central Gulf Steamship Corp.*, 416

F.2d 977 (5th Cir.1969), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970). In that case, we held that, where the suit of the cargo claimant against the ship owner is barred, the indemnity action is also barred.

### The Panel Decision

The panel of this Court [15] affirmed the second order of the District Court, holding Escambia to be a third-party beneficiary of the Hercules/Detco towage contract and therefore subject to all its defenses. The Court rejected Aetna's argument that it was a beneficiary not of the contract, but of the WWLP, finding that the action on the contract was barred and therefore any action on implied contractual warranties was likewise barred. As to Aetna's argument that its claim was for negligent towage, the Court found that the towage contract's broad language included negligence ("Tower and the tug shall be discharged from *all* liability in respect of *loss* or *damage claims arising hereunder* unless suit or action is brought within one year after delivery of the Tow or cargo. . . ." (emphasis added)). Thus Aetna, as subrogee of Escambia, was bound by this provision and could not recover for the loss of the cargo.

On Escambia's suit for indemnity, the Court considered and upheld the continued validity of *Grace Lines* in light of this Court's recent decision in *ITT Rayonier v. Southeastern Maritime Co.*, 620 F.2d 512 (5th Cir.1980).

### By Grace of Precedent

■ This case presents us with the opportunity to reexamine our oft-criticized 1969 decision in *Grace Lines*. After reviewing the substantial criticism [16] of that holding,

---

14. In its order of February 28, 1978, the District Court erroneously stated: "Escambia seeks to recover for cargo lost when the barge capsized." The District Court, in dismissing Escambia's cross-claim against Detco made no reference to indemnity.

15. *Hercules, Inc. v. Stevens Shipping Co.*, 629 F.2d 418 (5th Cir.1980).

16. *See, e.g., Federal Commerce & Navigation Co., Ltd. v. Calumet Harbor Terminals, Inc.*, 542 F.2d 437 (7th Cir.1976); *Prudential Lines, Inc. v. General Tire International*, 440 F.Supp. 556 (S.D.N.Y.1977); *Francosteel Corporation v. S.S. TIEN CHEUNG*, 375 F.Supp. 794 (S.D.N.Y. 1973); *Mitsui & Co. (U.S.A.) v. Toko Kaiun Kabushiki Kaisha*, 342 F.Supp. 14 (S.D.Tex. 1972); *Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha*, 342 F.Supp. 292 (S.D.Tex.1972);

we find we should no longer adhere to our minority position. We overrule *Grace Lines* and hold that a claim for indemnity arises only after the party seeking indemnity is held liable. The statute of limitation does not commence to run until the claim arises.

In *Grace Lines,* the SS SANTA VICTORIA, owned by Grace Lines, Inc. (Owner), was time chartered to Central Gulf Steamship Corporation (Central Gulf). This time charter included a USA Clause Paramount [17] which made the charter subject to COGSA as to liability to cargo and hence the one year limitation provision of that Act. Central Gulf (Charterer) contracted with Mitchell Cotts & Company, Ltd. (Mitchell) (Shipper), to transport a cargo of corn. This contract also was made subject to COGSA. The cargo was subsequently damaged due to the method of loading which prevented proper operation of the ship's ventilation system. The cargo insurer sued Central Gulf (Charterer), Grace Lines (Owner), and the vessel for damage to the cargo. Central Gulf (Charterer) subsequently filed a third-party action against Grace Lines (Owner) for indemnity based on breach of the time charter resulting from an unseaworthy condition created in loading so as to prevent operation of the ship's ventilation system, to which the master failed to object. The District Court found that the cargo suit against Grace Lines was barred by the one year statute of limitations but that the claim for indemnity was not barred because it had not accrued. This Court, reversing the District Court, held that the indemnity action by Central Gulf against Grace Lines was also barred by the COGSA one year limitation of the time charter. "Central's indemnity right being predicated on the claim of the cargo owner, and the cargo claimant and its insurer, Royal's cause of action against Grace being barred, clearly Central's cause of action for indemnity against Grace Lines would also be barred." 416 F.2d at 979. The Court found that, since Grace Lines was no longer

obligated to the shipper because the claim was barred by the statute of limitations, Grace Lines could not be liable for indemnity. The Court capsulated the basis for its decision: "To hold otherwise would be to deny Grace its legal defense of limitation. . . ." 416 F.2d at 979.

We recently reexamined the application of *Grace Lines* in *ITT Rayonier, Inc. v. Southeastern Maritime Co.,* 620 F.2d 512 (5th Cir.1980). In *Rayonier,* the Court distinguished the facts from *Grace Lines,* finding that the third-party claim for indemnity arose from a contractual agreement which contained no limitation provision. Rayonier, the shipper, contracted with Sylvan Shipping Co. to transport cargo to Rotterdam. This contract was governed by COGSA. The cargo was loaded by the stevedore, SEMCO. More than a year after the damaged cargo was delivered at Rotterdam, Rayonier sued SEMCO, the stevedore, but not the shipowner. Ten days later, SEMCO filed a third-party action for indemnity and contribution against the shipowner. Although SEMCO's contract with Sylvan contained no COGSA limitation provisions, the District Court granted Sylvan's motion for summary judgment, finding that SEMCO's third-party action was governed by the COGSA one year limitation under the *Grace Lines* rationale. This Court reversed, finding that *Grace Lines* was not controlling since whatever rights SEMCO might have to indemnity from Sylvan did not arise from an agreement subject to COGSA. "In the present case the only relationship governed by COGSA, the one between Rayonier and Sylvan, does not bear on SEMCO's theory of liability. COGSA has no application as between Rayonier and SEMCO or between SEMCO and Sylvan. Thus, we think *Grace Lines* does not decide the issue here." 620 F.2d at 514.

This Court's opinion in *Rayonier* illustrates the general approach used by courts

*Marubeni-Iida (America) Inc. v. Toko Kaiun Kabushiki Kaisha,* 327 F.Supp. 519 (S.D.Tex. 1971).

17. *See generally, Brown & Root, Inc. v. M/V PEISANDER,* 648 F.2d 415 (5th Cir.1981); *Croft & Scully Co. v. M/V SKULPTOR VUCHETICH,* 664 F.2d 1277 (5th Cir.1982).

to avoid the harsh *Grace Lines* precedent by distinguishing the cases on the facts and by reading *Grace Lines* narrowly. Where the relationship or contract between the party seeking indemnity and the one from whom indemnity is sought is not governed by an agreement subject to COGSA, courts decline to apply *Grace Lines. See Federal Commerce & Navigation Co. v. Calumet Harbor Terminals, Inc.,* 542 F.2d 437, 442 (7th Cir.1976) (claim for indemnity against stevedore separate from claim of cargo owner for initial cargo damage and if *Grace Lines* contra, expressly reject); *Trade Arbed, Inc. v. S/S Ellispontos,* 482 F.Supp. 991, 996–97 (S.D.Tex.1980) (*Grace Lines* not applicable where bills of lading governed by COGSA but charter party expressly excluded COGSA); *Prudential Lines, Inc. v. General Tire International Co.,* 440 F.Supp. 556, 559 (S.D.N.Y.1977) (*Grace Lines* not applicable where contract between plaintiff and defendant in indemnification action does not incorporate COGSA); *Francosteel Corp. v. S/S Tien Chung,* 375 F.Supp. 794, 796 (S.D.N.Y.1973) (*Grace Lines* not applicable since no proof that COGSA applies to charter party between third-party plaintiff and third-party defendant); *Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha,* 342 F.Supp. 292, 296–97 (S.D.Tex.1972) (*Grace Lines* not applicable where suit of primary liability to cargo not time-barred and stevedore third-party defendant based on oral contract not exposed to greater risks by extension of time for filing claim granted by shipper to cargo who never sued stevedore); *Mitsui & Co. (U.S.A.) v. Toko Kaiun Kabushiki Kaisha,* 342 F.Supp. 14, 20 (S.D.Tex.1972) (*Grace Lines* not applicable where stevedore has no COGSA liability to cargo under contract of carriage and its liability to carrier in indemnity action is based on separate contract); *Marubeni-Iida (America), Inc. v. Toko Kaiun Kabushiki Kaisha,* 327 F.Supp. 519, 522–23 (S.D.Tex.1971) (*Grace Lines* not applicable to charterer's third-party action for indemnity against stevedore since stevedore would not be sued directly under COG-

SA and therefore suit for indemnity against stevedore not barred).

The general rule of indemnity provides that a cause of action does not arise until there is a determination of initial liability.

> If defendant has a claim over against a third-party defendant—such as a claim for indemnity, contribution, etc.—the statute usually will not commence to run against the defendant (third-party plaintiff) and in favor of the third-party defendant until judgment has been entered against the defendant, or the defendant has paid the judgment. Thus a defendant may implead a third party to enforce against him a right of contribution, even though the statute may have run on any claim by plaintiff directly against the third party.

3 Moore's Federal Practice ¶ 14.09 at 14–55 to 56 (2d ed.1982) (footnotes omitted). *See United States Lines, Inc. v. United States,* 470 F.2d 487 (5th Cir.1972); *United States v. Farr & Co.,* 342 F.2d 383 (2d Cir.1965); *States Steamship Co. v. American Smelting & Refining Co.,* 339 F.2d 66 (9th Cir.1964), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1109, 14 L.Ed.2d 155 (1965); *Chicago, Rock Island & Pacific Railway v. United States,* 220 F.2d 939 (7th Cir.1955). *See also* 18 Couch Cyclopedia of Insurance Law § 75.32 at 725 and nn. 6 and 7 (2d ed. and Supp.1981); 20A Appleman, Insurance Law and Practice § 11689, at 651 and nn. 1–5 (1980). Thus, the statute of limitations would commence to run only after the party seeking indemnity had been found liable for damages. In admiralty claims, the limitation period (not its commencement) is generally determined by the equitable doctrine of laches. *See Florida Bahamas Line v. Barge Star,* 433 F.2d 1243 (5th Cir.1970). The doctrine of *Grace Lines* therefore operates substantively to alter standard indemnity law and the general maritime limitations.

Those courts either distinguishing or criticizing *Grace Lines* have advanced several persuasive policy considerations for circumventing *Grace Lines.*[18] First, *Grace Lines*

**18.** For a discussion of the policy reasons favoring the *Grace Lines* position, see *ITT Rayonier,*

620 F.2d at 515 (Tate, J., concurring).

runs counter to the standard indemnity law. "Third-party practice is simply a form of expeditious remedy that does not alter these substantive rules [that a cause of action for indemnity does not accrue until payment of the primary liability is made and that a claim cannot be time-barred before it accrues]". *Francosteel*, 375 F.Supp. at 796. Second, *Grace Lines* collides with the policy and language of F.R. Civ.P. 14, and specifically in admiralty cases, with F.R.Civ.P. 14(c), which provides for broad third-party practice.[19] *ITT Rayonier*, 620 F.2d at 514–15 (Tate, J., concurring); *Trade Arbed*, 482 F.Supp. at 997–98; *Prudential Lines*, 440 F.Supp. at 560; *Francosteel*, 375 F.Supp. at 796; *Marubeni-Idia*, 327 F.Supp. at 521–23.[20]

Finally, *Grace Lines* encourages selective suits and manipulation of limitations to foreclose claims for indemnification by some defendants. *ITT Rayonier*, 620 F.2d at 514–15 (Tate, J., concurring); *Francos-*

teel, 375 F.Supp. at 796; *Marubeni-Iida*, 327 F.Supp. at 523.

Even in the specific situation presented in *Grace Lines*, where both contracts invoke COGSA, the result and reasoning are unsound. There the cargo was damaged because of the way the cargo had been loaded which prevented normal use of the ship's ventilating system, but to which the master, with knowledge, failed to protest.[21]

For such a breach of the charter party the charterer had a time-honored maritime claim against the ship owner for whatever damages were sustained. But instead of recognizing this we cast this in terms of "... the mistake of reasoning by the ... trial court",[22] and then proceeded to make one of our own by stating the question-begging *non sequitur* that the charterer's

cause of action is based on the rights of the cargo claimant, and the fact that Central bases its cause of indemnity on a breach of the time charter agreement

---

**19.** F.R.Civ.P. 14 was patterned after Admiralty Rule 56. The Advisory Committee notes on the 1966 amendments to Rule 14 emphasize this origin.

> Rule 14 was modeled on Admiralty Rule 56. An important feature of Admiralty Rule 56 was that it allowed impleader not only of a person who might be liable to the defendant by way of remedy over, but also of any person who might be liable to the plaintiff. The importance of this provision was that the defendant was entitled to insist that the plaintiff proceed to judgment against the third-party defendant. In certain cases this was a valuable implementation of a substantive right. . . .

See *Falls Indus., Inc. v. Consol. Chem. Indus., Inc.*, 258 F.2d 277, 283–84 (5th Cir.1958); 3 J. Moore, *supra*, ¶¶ 14.01[10], 14.31, 14.34; C. Wright & A. Miller, Federal Practice and Procedure § 1441 (1971). For a discussion of Admiralty Rule 56, see *Cargill v. Compagnie Generale Transatlantique*, 235 F.2d 240, 242–43 (5th Cir.1956). Rule 14(c), which applies to admiralty and maritime cases, in keeping with the tradition of Admiralty Rule 56, allows broader impleader action than does Rule 14(a) or (b) and a defendant may bring in a third-party whom he claims is directly liable to the plaintiff.

**20.** The Court in *Prudential Lines* summarized the conflict between the *Grace Lines* position and the Federal Rules:

> Finally, in restricting the right of indemnification to cases in which the indemnitor

would be liable to the injured party, the *Grace Lines* rule appears contrary to the broad third-party practice traditionally available in admiralty. Rule 14(c), . . . expressly permits a claim over for indemnity or otherwise, not only where the indemnitor is or may be liable in whole or in part to the injured party, but also where the indemnitor owes a liability only to the indemnitee.

440 F.Supp. at 560 (footnote omitted).

**21.** This Court squarely held:

> The trial court correctly determined that since the capacity of the ship to transport the cargo in the manner specified in the charter party is an aspect of seaworthiness, the captain's failure to object to stowage interfering with ventilation was an omission as agent for the ship owner.

416 F.2d at 979 (citations omitted).

**22.** We continued:

> Thus the mistake of reasoning made by the able trial court was in assuming at the time suit was filed by Royal that Central would have a cause of action for indemnity against Grace based on breach of the time charter agreement resulting from an unseaworthy condition being created in loading the corn in such a manner as to prevent proper operation of the ship's ventilation system, to which conduct the master of the vessel, as agent for Grace, failed to object.

*Id.*

could not under any theory give Central a greater right than that which the cargo claimant and its insurer, Royal, had against Grace.

416 F.2d at 979.

We then administered the *coup* de *Grace*: Once the period of limitation ran on [Cargo's] suit against Grace, [Owner] no indemnification theory could establish Central's [Charterers] right to receive indemnification from Grace [Owner]. Indemnity may not be awarded without the support of liability on the part of the indemnitor [Grace] to the person injured [cargo] and since Grace was no longer obligated to [cargo] Grace could not be liable in a cause of action for indemnity by Central. 416 F.2d at 979

The fact that cargo's suit against the owner was not timely filed did not alter the awesome fact that the charterer (in its role as carrier) had been or would be held liable. We repeated that the charterer's "indemnity right being predicated on the claim of the cargo owner, and the cargo claimant . . . cause of action against Grace being barred, clearly [charterer's] cause of action for indemnity against Grace would also be barred." *Id.* 979. The error of this Court was in assuming that the charterer's claim came through cargo. To the contrary, the charterer's claim for indemnity was based on the fact that it had been or would be held liable to cargo for damages and that this was due to the vessel's unseaworthiness. That the shipowner had no liability to cargo did not eliminate the charterer's out-of-pocket loss which was caused by a breach by shipowner, of its independent, separate contractual obligation.

■ With these policy considerations in mind, we return to the specific facts before us. Hercules' suit against Detco for damage to the barge was dismissed because of the one-year limitation provision to which Escambia was held by the panel to be a third-party beneficiary. Since in Aetna's cargo claim, *Post,* we do not follow the third-party beneficiary analyses, there was no contractual limitation period as between Escambia and Detco covering loss or dam-

age to the barge (not cargo). Yet at that point, Escambia had not even been held liable to Hercules for damage to the barge. Its cause of action against Detco for indemnity for any liability for hull damage had not yet arisen since there had been no determination of liability to Hercules. Nor could Escambia have taken any action to prevent this situation unless it ought to have anticipated before the expiration of the year's period that Hercules would file suit for barge damage. If the rationale of *Grace Lines* were applied, Hercules could, if it chose to do so, wait until one day after the one-year limitation had expired and then sue Escambia, with the result that Escambia could not protect itself from the liability-causing actions of Detco. Escambia's fate might depend on connivance between Hercules and Detco, in the private waiver of limitation contentions. If Detco had been negligent in towing the barge, the result would be that Escambia would become an insurer to Hercules, without express language calling this fact to Escambia's attention. Because of Hercules' delay in initiating the lawsuit and the limitation provision in the towage agreement, Escambia would be denied the right to litigate its third-party claim for indemnity under *Grace Lines* based on negligent towage by Detco. "As between potential defendants, an opportunity to hold liable the party primarily responsible should not be foreclosed by plaintiff-choice." *ITT Rayonier,* 620 F.2d at 515 (Tate, J., concurring).

We think the better rule is that a cause of action for indemnity arises separately from and after liability has been established. We can find no logical basis for continuing to uphold *Grace Lines* which "has sailed heavy seas of criticism since its announcement," *Hercules,* 629 F.2d at 424, and we consign it to the briny deep. We therefore reverse the District Court's judgment dismissing as untimely filed Escambia's claim for indemnification against Detco. In so doing, obviously we do not reach the merits of Escambia's indemnity claim against Detco.

### The Cargo Claim

We turn now to the claim against Detco for loss of the cargo of poles. Aetna, as Escambia's subrogated insurer, is entitled to recover, if at all, based on the rights that Escambia would have. The District Court, in originally dismissing Aetna's petition for intervention on September 28, 1977, based its decision on the one year COGSA limitation incorporated by Paragraph 9 of the charter party. *See* note 4 *supra.* However, the District Court in reconsidering the denial of intervention, withdrew its first judgment based on the charter party because "Aetna raised factual issues concerning the intent of the contracting parties in relation to the COGSA incorporation provision of the Escambia-Hercules agreement." From the District Court's decision on January 23, 1978, it is clear that the District Judge no longer believed that summary judgment on the charter agreement was appropriate in light of the discovery carried on by Aetna. Although standing alone, this problem would hardly be enbancworthy, we conclude that action by us is appropriate rather than letting stand the panel's analysis of third-party beneficiary. We reverse the District Court's order dismissing Aetna's petition for intervention and remand to the District Court to determine in the light of discovery and all other pertinent evidence the nature of the arrangement and the purpose of the charter agreement between Hercules and Escambia.[23]

Although Paragraph 9 of the charter party between Hercules and Escambia clearly prescribes that Hercules and the tug are accorded the benefits of COGSA, the nature of the total arrangement between Hercules and Escambia is essential to the determination of whether the COGSA incorporation is valid. The District Court on remand should determine whether the arrangement was one for transportation with shipper looking entirely to a turn-key performance by Hercules without regard to the towage Hercules would have to obtain. If the District Court decides the dominant purpose of this contractual arrangement was one of transportation, then the parties are free in this contract of private carriage to incorporate the provisions of COGSA.[24]

Since paragraph 9 extends to Escambia, the shipper, and thereby to its subrogee, Aetna, "all the rights and immunities and exemptions" under COGSA, the tower and

---

**23.** The panel of this Court did not pass on the basis asserted for the District Court first order since "it was later rejected" and "we find the substituted ground [third-party beneficiary] to be correct." *Hercules, Inc.,* 629 F.2d at 421 n. 5.

**24.** Although a contract of affreightment usually involves common ownership of the tug and barge, or bare-boat charter to the same person, *see* A. Parks, The Law of Tug, Tow, and Pilotage 43 (2d ed. 1982), we do not view ownership as conclusive, especially in this case where Hercules and Detco had previously entered a long-term contract which was amended prior to the Hercules/Escambia contract. The focus of inquiry should be on the intention of the parties and whether Escambia was contracting for Hercules to provide transportation of the poles *in the manner Hercules chose to perform this task* or whether Escambia was contracting to charter the barge and to hire Detco to tow the barge. If Escambia was looking to Hercules to provide full facilities, including *both* barge and tug, the contract would be one for affreightment or transportation, not towage. *See generally Sacramento Navigation Co. v. Salz,* 1927 A.M.C. 397, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927); *Brown & Root, Inc. v. American*

*Home Assurance Co.,* 353 F.2d 113, 117–18 (5th Cir.1965); *Continental Grain Co. v. American Commercial Barge Line Co.,* 332 F.2d 26, 27 (7th Cir.1964); *Mississippi Valley Barge Line Co. v. T.L. James & Co.,* 244 F.2d 263 (5th Cir.1957); *Allied Chemical Corp. v. Gulf Atlantic Towing Corp.,* 244 F.Supp. 2 (E.D.Va.1964); *Pure Oil Co. v. M/V CARIBBEAN,* 235 F.Supp. 299 (W.D.La.1964).

That ownership, indeed, operation or control of the essential physical facilities is not required to constitute the business of "transportation" is well established in the maritime law. The classic example is a ship under time or voyage charter to the charterer who then contracts with individual shippers and issues bills of lading as a carrier. The example only gets more extreme as the initial time/voyage charterer subcharters, to the first subcharterer and so on down the line. *See* analogous situations under the Motor Carrier Act, *United States v. Rosenblum Truck Lines,* 315 U.S. 50, 62 S.Ct. 445, 86 L.Ed. 671 (1941); *Thomson v. United States,* 321 U.S. 19, 64 S.Ct. 392, 395, 88 L.Ed. 513 (1944); *Agricultural Transportation Association of Texas v. King,* 349 F.2d 873, 880 -81 (5th Cir.1965).

tug would be immune under § 1304 from all liability arising from (2)(a) errors in navigation or management; (b) fire; (c) perils of the sea, (d)(e)(f)(g) acts of God, war, princes, etc.; (i) acts of shipper and (q) any other cause arising without the actual fault of the carrier, leaving for all practical purposes only unseaworthiness caused by want of due diligence.

Any such determination makes wholly immaterial whether, and if so, the extent of any relationship between Escambia, the shipper, and the Detco-Hercules contract. On the validity of paragraph 9 Aetna (Escambia) would have no claim against the towing tug, notwithstanding any rights had there been no paragraph 9 in the transportation contract.

Without intruding in the least in the District Court's function on remand, there is much in the Hercules-Escambia charter which makes it a transportation contract.

First, the inducement "whereas" clauses speak in terms of Escambia's "desire to transport its cargo" from Georgia to San Juan, P.R. Second, it describes Hercules, the owner, as owning the suitable barge and having "... the availability of and rights to tug services ... suitable for the tow-

ing. ..." And lastly, is the mutual desire "... of entering into an agreement for the above transport purposes. ..."

Even more important, Escambia, the shipper was to pay $25.75 per short ton (subject to a minimum of 1900 short tons). No liability was placed on Escambia, the shipper, to pay for towage. Free time, loading/unloading time was payable on an hourly/daily rate with no provision as to tugs.

Nor does *Bisso* offer any aid to Aetna's claim if the Hercules-Escambia agreement was one for transportation, not towage.

### Bisso in Tow

In the event the District Court were to conclude the whole arrangement between Escambia and Hercules was not intended as a transportation contract, but that a separate towage contract was contemplated, he should then hold that the attempted incorporation of COGSA is ineffective because of *Bisso.*

Aetna urges that its claim for cargo damage against Detco is one of negligent towage and breach of WWLP,[25] and that the

---

**25.** For over half a century the Supreme Court has declared the standard between tug and tow to be due care. In *Stevens v. The White City,* 285 U.S. 195, 201 (1932), 52 S.Ct. 347, 349, 76 L.Ed. 699, a case that readily qualifies as seminal, the Court declared:

> It has long been settled that suit by the owner of a tow against her tug to recover for an injury to the tow caused by negligence on the part of the tug is a suit *ex delicto* and not *ex contractu. The Quickstep,* 9 Wall. 665, 670, 19 L.Ed. 767, 768; *The Syracuse,* 12 Wall. 167, 171, 20 L.Ed. 382, 384; *The J.P. Donaldson,* supra 167 U.S. [599] 603, 42 L.Ed. 293, 17 S.Ct. 951); *The John G. Stevens,* 170 U.S. 113, 125, 42 L.Ed. 969, 974, 18 S.Ct. 544 [549]; *The Brooklyn* (D.C.) 2 Ben. 547, Fed. Cas. No. 1,938; *The Deer* (D.C.) 4 Ben. 352, Fed.Cas. No. 3,737; *The Arturo* (C.C.) 6 Fed. 308.

The Court spelled out the duty plainly:

> While [the tug] was not an insurer or liable as a common carrier, it owed to the owner of the [tow] the duty to exercise such reasonable care and maritime skill as prudent navigators employ for the performance of similar service. The burden was upon petitioner to

show that the loss for which he sought recovery was caused by a breach of that duty.

We continue to speak in these terms rather than the asserted breach by Detco of the warranty of workmanlike performance (WWLP). We do this because, for our present purposes Aetna may never have an effective claim against Detco. And if it does, recovery under *White City* may be as readily available as under WWLP. We thus avoid the necessity of the parties bringing into question the application of our holding in *Stevens v. East—West Towing Co., Inc.,* 649 F.2d 1104, 1109 and (5th Cir. 1981) which, with others, has been the object of strenuous attack from some quarters. *See* A. Parks, The Law of Tug, Tow and Pilotage (2d ed. 1982), p. 29:

> Warranty of Workmanlike Service

> In a strange line of cases, seemingly without reference to the well-established rule in *Stevens v. The White City, supra,* some courts have held a tug company to a warranty of workmanlike service. *See James McWilliams Blue Line, Inc. v. Esso Standard,* 1957 A.M.C. 1213, 245 F.2d 84 (CA–2); *Dunbar, Admx. v. H. Dubois' & Sons Co. and Bronx Towing Line, Inc.,* 1960 A.M.C. 1393, 275 F.2d 304 (CA–2); *Singer v. Dorr Towing Co.,*

incorporation of COGSA and its one-year limitation in the charter agreement is an exculpatory provision void under *Bisso*. Of course, to reach this point, Aetna first must succeed in establishing that the relationship under the charter agreement is one of towage, not carriage.[26] Aetna's obvious purpose in contending for a towage contract, rather than a contract of affreightment, is to seek shelter under the mantle of the *Bisso* doctrine. Since *Bisso* condemns exculpatory clauses that relieve a negligent tower of liability, Aetna urges that the incorporation of COGSA into the charter agreement allows the tower, Detco, to do indirectly that which it cannot do directly, that is to shield itself from negligence.

The incorporation of COGSA does indeed affect the rights of the parties. The COGSA incorporation not only limits the time in which suit may be brought, it also alters the substantive rights and duties of the parties. The general standard of negligence (or WWLP) applied to a tower is markedly reduced by COGSA which excuses a multitude of sins, including faults in navigation, etc. This Circuit has held that cross insurance clauses with waiver of subrogation do not run afoul of *Bisso*. See *Twenty Grand Offshore, Inc. v. West India Carriers, Inc.,* 492 F.2d 679 (5th Cir.1974), *cert. denied,* 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 63 (1974); *Flour Western, Inc. v. G & H Offshore Towing Co.,* 447 F.2d 35 (5th Cir.1972); *Hartford Fire Ins. Co. v. Port Everglades Towing Co., Ltd.,* 454 F.2d 276 (5th Cir. 1972); A. Parks, The Law of Tug, Tow, and Pilotage 69–89 (2d ed. 1982); Note, Admiralty—The Undermining of the Bisso Rule,

---

1968 A.M.C. 146, 272 F.Supp. 931 (ED, La.); *Sands Point—Yacht Abogado,* 1968 A.M.C. 668, 271 F.Supp. 529 (D, Md.); *Padovano v. Damps. Torm, A/S,* 1970 A.M.C. 1345 (NYAD); *A/S Atlantica v. Moran Towing & T. Co.,* 1974 A.M.C. 555, 498 F.2d 158 (CA–2); *Stevenson v. Whiteman Towing,* 1971 A.M.C. 345, 331 F.Supp. 1038 (ED, La.); *Fairmont Shipping Co. v. Chevron International Oil,* 1975 A.M.C. 261, 511 F.2d 1252 (CA–2), *cert. den.,* 423 U.S. 838 [96 S.Ct. 66, 46 L.Ed.2d 57]; *S.C. Loveland v. East West,* 1978 A.M.C. 2293, 415 F.Supp. 596 (SD, Fla.). Compare, however, *Transcontinental Gas Pipe Line Corp. v. Mobil Drilling Barge, etc.,* 1970 A.M.C. 1147, 424 F.2d 684 (CA–5); *In re Seaboard Shipping Corp.,* 1971 A.M.C. 2145, 449 F.2d 132 (CA–2); *South, Inc. v. Moran Towing & Transportation Co.,* 1966 A.M.C. 1987, 360 F.2d 1002 (CA–2); *National Transport v. Abquaiq,* 1970 A.M.C. 1943 (SDNY); *Bouchard Transp. Co. v. Tug Gillen Bros.,* 1975 A.M.C. 2030, 389 F.Supp. 77 (SDNY); *Mid-America v. National Marine,* 1974 A.M.C. 1943, 497 F.2d 776 (CA–8).

It is submitted that a warranty of workmanlike service is not applicable to a towage situation and, if extended by an erroneous belief in its applicability, would fly in the face of the rule in *The White City*.

*See also* pp. 361–363 where the author points out:

It should also be noted that the Fifth Circuit has consistently refused to imply a warranty of workmanlike service in cases which do not involve the shipowner's strict liability for injuries due to unseaworthiness. Compare *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge, etc.,* 1970 A.M.C. 1147, 424 F.Supp. [F.2d] 684 (CA–5), *cert. den.* 400

U.S. 832 [91 S.Ct. 65, 27 L.Ed.2d 64] (1970); *Loffland Bros. Co. v. Roberts,* 1968 A.M.C. 1463, 383 [386] F.2d 540 (CA–5); *Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Service, Inc.,* 1962 A.M.C. 2593, 377 F.2d 511. See, also, in the Eighth Circuit, *Mid-America v. National Marine,* 1974 A.M.C. 1943, 497 F.2d 776 (CA–8).

It warrants emphasizing also that in *East-West* the breach of WWLP resulted in personal injuries claimed to have resulted from unseaworthiness, the very thing giving rise to the *Ryan* doctrine. This Court has yet to rule that as between the tow, its cargo, or both, and the tug, the tug may be exposed to WWLP liability for property damages, not indemnity although the dicta in *East-West* is strong.

This Circuit has reluctantly expanded the application of the *Ryan* doctrine. "Except in the context of independent contractors on drilling barges, our Circuit has been reluctant to expand the applicability of the *Ryan* doctrine." *Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.,* 651 F.2d 1096, 1100 (5th Cir.1981) (dispute between vessel and stevedore over damaged cargo). *See Thibodeaux v. Texas Eastern Transmission Corp.,* 548 F.2d 581, 585 (5th Cir.1977).

*See* Note, Towage Accidents and the Implied Warranty of Workmanlike Service: A new Strict Liability?, 10 Ga.L.Rev. 794 (1976).

**26.** Language in the Detco-Hercules towing agreement specifically made clear that as between Detco and Hercules it was, and was to be construed as towage, not transportation. But, as pointed out above, if the Escambia-Hercules contract was legally one for transportation, these expressions would have no effect.

9 Mem.St.U.L.Rev. 223 (1979); Dixon & Canning, The Continuing Erosion of Bisso— Waiver of Subrogation and Benefit of Insurance Clauses, 44 Ins. Counsel J. 97 (1977). But except for this we are bound to, and do, apply *Bisso* to invalidate exculpatory devices.

*Bisso* turns on the Court's determination on remand whether the Escambia-Hercules relationship was an arrangement for *transportation.*

It bears repeating that, if the contract is one for transportation, we have no difficulty finding *Bisso* inapplicable. Under a private contract of carriage, Escambia could, and indeed did, release the tug from liability. Paragraph 9 of the charter agreement makes clear that the *owner and the tug* are entitled to the benefits of COGSA. Nor are we persuaded by Aetna's argument that the parties did not mean to incorporate all of COGSA under Paragraph 9. The section of COGSA restricting liability for negligence is § .1304 which was specifically incorporated through the use of the words "rights and immunities." We reject as frivolous the contention that the one-year limitation provision in § 1303 was not also included. By the express agreement between Escambia and Hercules, it is clear that Escambia was aware of, and consented to, the incorporation of COGSA into the charter party. If the District Court determines that the contract was one for transportation, it is clear that Escambia released Detco from all COGSA liability.

The cause is reversed and remanded for further consistent proceedings. The trial court shall determine initially the extent to which further evidence is required or appropriate.

REVERSED and REMANDED.

REAVLEY, Circuit Judge, with whom CHARLES CLARK, RONEY, GEE, ALVIN B. RUBIN and R. LANIER ANDERSON, III, join concurring:

The court states that "there was no contractual limitation period as between Escambia and Detco covering loss or damage to the barge (not cargo)." It follows that the court is *not* holding that statutory or contractual limitations, stated to begin to run upon delivery, begin to run against an indemnity claim only after payment or judgment. *See ITT Rayonier v. Southeastern Maritime Co.,* 620 F.2d 512 at 515 (Tate, J., concurring); *Francosteel Corp. v. S.S. Tien Cheung,* 375 F.Supp. 794 at 796. The only change made in the law of the circuit by the writing on the indemnity claim is to repudiate the rationale of *Grace* (this being that since cargo Royal was time-barred against owner Grace, charterer Central's indemnity claim was therefore likewise time-barred against owner Grace). *Grace Lines v. Central Steamship Corp.,* 416 F.2d 977 at 979. For this reason I concur.